JiPEATROSS, Judge.
In this suit on a promissory note, the plaintiffs, L.A. West (‘West”) and Twin City Investments of Monroe Partnership (“Twin City”), appeal a judgment which awarded them the full value of a $32,500 promissory note, and which allowed an offset in favor of the Defendant, East Town & Country Drainage District (“Defendant”), in the amount of $2,753.46 and the amount of any outstanding liens of record with the Ouachita Parish Clerk of Court’s Office due and owing by West or Twin City. In their only assignment of error, West and Twin City argue that the trial court should not have allowed Defendant to offset the amount of any drainage liens against the balance due and owing on the promissory note. Defendant answered the appeal and raised two assignments of error. Defendant argues that the trial court erred in finding sufficient consideration given by West and Twin City to support the exchange of the promissory note and, further, that “the trial court erred in finding that a plaintiff in a law suit may file suit in an individual’s name, but be recognized as filing for agent of the partnership of which that *1034 individual is a partner when the lack of consideration is raised as a defense.”
FACTS
This dispute arises over a $32,500 promissory note executed in favor of West on April 24,1986, by Defendant, through its representatives James W. Moore and B.R. Franklin. This case was originally appealed to this court in West v. East Town & Country Drainage District, 26,538 (La.App.2d Cir. 3/1/95), 651 So.2d 907. We will briefly review the facts which are more fully set out in that opinion.
Construction of a levee system to benefit the East Town and Country Subdivision and certain adjacent property began in 1973 or 1974. On May 20, 1974, West granted a servitude to the Defendant to permit the levee to cross a ^section of land then owned by West. West attached a letter to the servitude agreement wherein he stated that the servitude would become null and void if the levee’s height exceeded 73 feet because, as West stated in the letter, he believed that any levee height in excess of 73 feet would be a “waste of money.” The section of the levee involved in the present appeal was constructed in 1983-84 and is located on land which was owned by West at the time the 1974 servitude was granted. The evidence shows that West subsequently transferred this property to Twin City Machinery, Inc. on December 23, 1982. Twin City Machinery, Inc. was dissolved on July 1, 1986 and all its assets were transferred to Twin City Investments of Monroe Partnership.
Approximately ten years after the 1974 servitude grant, West demanded that the district pay him for the land on which the 1983-84 section of the levee was built, claiming that the 1974 servitude was null and void because of prescription for nonuse and because the elevation of a portion of the levee exceeded 73 feet. The Defendant claims to have initially attempted to resolve the situation by canceling $2,753.46 in hens; but, thereafter, on April 24, 1986, Moore and Franklin signed the $32,500 note presented to them by West. The promissory note was allegedly given to West as consideration for a new levee servitude and the forbearance of a lawsuit by West. A new servitude, however, was never executed by either West or Twin City.
The trial judge originally rendered judgment in favor of West, but reduced the debt after finding that the actual land taken for the levee was only .32 acres rather than the 1.37 acres claimed by West, and assigning a value of $8,100 to the .32 acres. West and Twin City were ordered to execute a servitude agreement in favor of the Defendant covering the .32 acres of land burdened by the levee. The trial judge determined the original 1974 servitude had not prescribed, but was void [3because the 73 foot height restriction was exceeded during the 1974 or 1975 construction of a portion of the levee. The trial judge also offset the $8,100 by the $2753.46 in liens and any other hens of record.
In the original appeal, this court determined that Twin City, as the then record owner of the property in dispute, was an indispensable party. The trial court’s judgment, therefore, was annulled and the case remanded for further proceedings with Twin City added as a party plaintiff. After remand, a new trial was held whereby West and Twin City attempted to collect on the $32,500 note executed by Defendant. In its supplemental reasons for judgment, the trial court concluded that the promissory note was given for valid consideration, specifically, a valid servitude to build the levee and West’s forbearance from suing to enforce his claim for land taken by the Defendant to build the levee. In its “Supplemental and Amending Judgment,”[1] the trial court awarded West and Twin City the full amount of the promissory note, but offset that amount by $2,753.46 and by the amount of any outstanding liens allegedly owed by West and Twin City.
*1035 It is from this judgment that West and Twin City appeal, assigning as error the offset of liens. Defendant answered the appeal and assigned as error the finding of sufficient consideration and the allowance of West to sue individually and as agent for the partnership. For the following reasons, we reverse the judgment of the trial court.
DISCUSSION
Since we conclude that the first assignment of error raised in Defendant’s answer has merit, we shall discuss it first. Defendant alleges that the trial court was in error in finding sufficient consideration for the issuance of the note. UDefendant contends that West and Twin City did not carry their burden of proof that valid consideration was given in exchange for the $32,500 note because: (a) the 1974 servitude had not prescribed, (b) West did not own the property and (e) no new servitude was ever granted.
The $32,500 note names West as the payee and does not mention Twin City. The original petition in this suit named West as the only plaintiff. As stated above, this court remanded this case to the trial court so that Twin City could be added as a party plaintiff since it was the record owner of the property in 1986. The amended petition does not contain a prayer for relief based on any claim other than the promissory note.
Since West, in 1986, did not own the property at issue in the present suit, he was not the proper party to grant a servitude in favor of Defendant.[2] There are no allegations in the pleadings, including the amended petition, that West was acting as agent for Twin City in granting the alleged servitude or in accepting the $32,500 promissory note issued to him personally. In addition, the pleadings contain no allegation of, and the evidence does not show, any assignment or other transfer of the note from West to Twin City.
In regard to a forbearance, West was not the proper party to grant a forbearance to Defendant because West had already sold the property in 1982. Twin City or its predecessor in title, Twin City Machinery, Inc., was the owner of the property and would be the proper party to grant a forbearance to Defendant in 1986. Even assuming that West had authority to grant such a forbearance, no written agreement was ever executed between the parties or recited in open court |5as required by La. C.C. art. 3071.[3] See Turney v. Seale, 473 So.2d 855; writ denied, 477 So.2d 715 (La.1985) in which the court, in concluding that a compromise of a disputed claim was given for value and supported by valid consideration, stated:
The agreement reached by the parties to this suit fulfills all the requirements set forth in article 3071. Each party gave up something of value in order to put an end to the litigation; additionally, the terms of the compromise were incorporated into the trial court’s judgment.[4]
In addition, we conclude that the 1974 servitude agreement was not prescribed or void. In his written reasons for judgment, the trial judge stated:
*1036 This court is not required to decide if the servitude Mr. West granted to the Drainage District on May 20, 1974, had prescribed or was invalid because of a violation of the levee height restriction. A resolution of these issues is not determinative of the outcome of this case.
We do not agree with the trial judge’s conclusion. If the 1974 servitude was neither prescribed nor void due to violation of the height restriction, then West could not claim as consideration for the promissory note any portion of the levee built on property pursuant to the 1974 servitude agreement.
In his first argument, West claims that the servitude prescribed due to nonuse. In the 1974 agreement, West conveyed a conventional servitude of a right 16of use for levee purposes to the Defendant, a legal entity. La. C.C. arts. 639, 641. A right of use is governed by the rules governing usufruct and predial servitudes. La. C.C. art 645. A predial servitude is extinguished by nonuse for ten years. La. C.C. art. 753. Prescription of nonuse begins to run from the date the servitude was last used. La. C.C. art. 754.
During trial, the Defendant introduced bid proposals dated August 1983 from Johnny Jones. Moore testified that these proposals related to the section of the levee at issue in this case. He also testified that Jones was awarded the job of building the levee. The Defendant also introduced checks dated October 20,1983, December 12,1983, and January 25,1984. Moore stated that these checks were issued as payment for Jones’ work on the levee.
The evidence shows that construction on the section of the levee located within the 1974 servitude area began in late 1983. The 1974 servitude agreement was signed on May 20, 1974, and would not prescribe due to nonuse until May 20,1984. We conclude that the servitude had not prescribed at the time the note was issued.
West’s second argument is that the servitude was void because the 73 foot height restriction was violated. He points to the testimony of Asa Ray, the consulting engineer for the 1974 levee section, to the effect that part of the 1974 levee exceeded the 73 foot restriction.[5] Ray also stated, however, that the reason this section of the levee was greater than 73 feet was because the contractor added to the levee extra dirt obtained from the digging of a nearby canal. Minutes of the drainage district board meetings show that the board members voted to construct the levee at a height of 73 feet. In addition, a letter dated January 7, 1975, from j7the Louisiana Department of Public Works to the Ouachita Parish Police Jury states that even though the department recommended the levee be built to a height of 75 feet, it had been informed that the height would be 73 feet.
The Defendant also introduced letters written by Ray which discussed the height of the levee. In a letter dated December 20, 1974, to a Mr. Merlin Pistorus, Ray stated that the levee was to be constructed to an elevation of 73 feet and that a section on the south side was constructed to a level of 74 feet because the contractor excavated excess material during the construction of a nearby canal. In a letter dated February 17, 1975, to Mr. W.E. Laird, Ray stated:
The levee was planned originally at elevation 75’ msl. The commissioners elected to construct the levee at 73’ for economical reasons after noting that no water had been predicted to reach elevation of 73’ by any Public Works Agency involved in studying high water in the proximity of the project. It is also noteworthy to state that the levee along the South side of the project has been constructed to elevation 74 plus due to excess material deposited in constructing the levee by the contractor because of the excavation of the new canal for Chauvin Bayou Canal L-ll as relocated by the drainage district according to the plans.
When asked if the placement of excess material by the contractor was unusual or objectionable, Ray answered that it would not be *1037 unusual and, “[i]t would give greater protection.”
In the letter attachment to the 1974 servitude agreement wherein West established the height restriction, he stated that he did not feel a levee higher than 73 feet was needed because the water had never risen to a height greater than 70.3 feet. West concluded:
These are the reasons which I will not participate in the cost of any levee for this area which exceeds the elevation of 73 feet, as I well know this is a waste of money and is rightfully the responsibility of the State of Louisiana and the people to whom we pay our taxes for this area.
The evidence shows that the levee reached a height over 73 feet only because the contractor had excess material which he did not want to haul away. West placed 18the height restriction on the levee because of his concern of unnecessary costs to the taxpayers. The Defendant did not design or contract the levee to be over 73 feet, nor did it incur any additional cost because this one section exceeded 73 feet. From the evidence before us, we conclude that the servitude was not voided as a result of a violation of the 73 foot height restriction.
Having concluded that the 1974 servitude had not prescribed, that West was not the proper party to grant a servitude on this property in 1986 and that West did not grant a forbearance in exchange for the note, we next look to see if Twin City gave valid consideration for the note. First, the note was issued to West personally and, as previously stated, there is no evidence of an assignment of the note by West to Twin City. Twin City, therefore, has no claim based on the note issued by Defendant. In addition, the 1974 servitude was recorded in the public records of Ouachita Parish; and, accordingly, when the property in dispute was transferred to Twin City, it was still subject to the servitude granted by West. We also note that no forbearance agreement was ever executed by Twin City. We conclude, therefore, that the evidence does not support a finding that consideration was given by either West or Twin City in exchange for the note.
Finding that West was not the owner of the property in 1986, that neither West nor Twin City (or its predecessor in title Twin City Machinery, Inc.) granted a forbearance and that the 1974 servitude has not prescribed, we conclude that valid consideration was not given in exchange for the note at issue. Since we reverse the judgment of the trial court due to the failure of consideration, we do not reach Defendant’s other assignment of error or the assignment of error raised by West and Twin City.
^CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court. Costs of this appeal are assessed to the plaintiffs.
REVERSED.

. The tille of "Supplemental and Amending Judgment” is a misnomer because, as previously stated, in our original opinion we annulled the trial court’s original judgment and remanded the case. We treat the “Supplemental and Amending Judgment" as the only valid judgment in this case.

. We note that there is some vague testimony that the levee occupies a portion of land that is not included in the 1974 servitude agreement. Assuming that this is true, the same reasoning expressed in this opinion would apply and we, therefore, do not discuss that situation separately-

. La. C.C. art 3071 states in pertinent part:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must either he reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding, (emphasis added)

.We note that, in Morehouse Parish Hosp. Service Dist. v. Pettit, 25,397 (La.App.2d Cir. 1/19/94), 630 So.2d 1338, this court acknowledged that multiple instruments read together can suffice for the writing requirement of art. 3071 if they outline the parties' obligations and evidence the parties’ acquiescence of the agreement. While there is a letter of demand from West to Defendant demanding payment and threatening suit, copies of minutes from the meeting of the drainage district board wherein the situation was discussed and even an executed note, we conclude that these documents when read together do not clearly outline the parties' obligations and evidence their acquiescence of an agreement.

. The portion of the levee which exceeded the 73 foot height restriction was not located on any land owned by West, but was located on land owned by others to the south of the West property-