LEWIS, J.
Duval Motors Company d/b/a Duval Ford, Appellant, seeks review of an order denying its motion to compel arbitration of several claims filed by Cassandra and Alton Rogers, Appellees. Appellant contends that the parties have a valid agreement requiring arbitration of Appellees’ claims. For the reasons explained below, we disagree with Appellant and affirm the trial court’s decision.
On June 19, 2009, the parties signed multiple documents related to a vehicle purchase transaction. One of those documents is the Retail Installment Sales Contract (“RISC”). The RISC identifies Ap-pellees as the Buyer and Co-Buyer and Appellant as the Seller-Creditor. It then sets forth the following terms:
You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller — Creditor (sometimes “we” or “us” in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below.
The RISC identifies the vehicle being purchased and provides the financial terms of the purchase, including the down payment, the total sale price, the total amount financed, the annual percentage rate, the total finance charge, and a payment schedule. The RISC also contains a warning that state law does not provide a “cooling off’ period for the transaction and that Appellees are not entitled to cancel the contract simply because they change their minds. Additionally, the RISC provides that Appellant “may assign this contract.” Finally, and most importantly, the RISC contains the following merger clause:
HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.
*264 The RISC does not contain an arbitration agreement.
The arbitration agreement appears in a separate document, the Retail Buyer’s Order (“RBO”), which was signed the same day. The RBO identifies the vehicle being purchased and lists the vehicle’s price and the fees associated with the purchase. Additionally, the RBO provides that “[t]he retail installment sales contract (“RISC”) to be entered between Dealer and Customer, unless otherwise indicated in writing by Dealer, shall be immediately assigned by Dealer to a bank / finance company (at face value or greater) which shall then be the creditor to whom Customer shall be obligated under the RISC.” It then states that the dealer has the right to terminate “this Order,” i.e. the RBO, if the dealer cannot obtain credit approval for the customer or if the dealer is unable to sell the RISC to a financial institution on terms of no less than face value. The RBO states that if the customer takes delivery of the vehicle before the dealer obtains financing approval, then delivery “serves as a convenience to Customer only and Customer does not have, nor will acquire, any rights or interests in the Vehicle by such delivery except Dealer’s permission to use it, which permission can be revoked, requiring the Vehicle’s immediate return to Dealer in the same condition as it existed when delivered to Customer.” Finally, the RBO purports to make financing approval a condition subsequent to the enforcement and validity of the RISC.
According to Appellees’ complaint, they took delivery of the vehicle after signing all the documents associated with the transaction. They alleged that two weeks after they took delivery, Appellant demanded an additional down payment of $5,000. According to the complaint, Appellant took the vehicle from Appellees’ possession after they refused this new demand. Appellees asserted seven causes of action arising out of these events. Instead of an answer, Appellant filed a motion to compel arbitration. The motion was based on the arbitration agreement in the RBO, which Appellant contends is part of the parties’ contract. Appellees argued, among other things, that the merger clause precluded consideration of the RBO. After reviewing the language of the documents at issue and considering the parties’ arguments, the trial court denied Appellant’s motion, concluding that no binding arbitration agreement existed with respect to the transaction at issue. Based on the merger clause, we agree with the trial court.[1]
In determining whether to compel arbitration, a trial court is limited to three inquiries: “(1) whether a valid written agreement exists containing an arbitration clause, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived.” Piercy v. School Bd. of Washington Cnty., Fla., 576 So.2d 806, 807 (Fla. 1st DCA 1991). In the instant case, the trial court concluded that no valid agreement to arbitrate existed relating to the transaction at issue. This conclusion was based on construction of the parties’ contract. Therefore, it is subject to de novo review. Gainesville Health *265 Care Ctr., Inc. v. Weston, 857 So.2d 278, 283 (Fla. 1st DCA 2003).
Interpretation of a contract begins with its plain language. Taylor v. Taylor, 1 So.3d 348, 350 (Fla. 1st DCA 2009). As a general rule, evidence outside the contract language, which is known as parol evidence, may be considered only when the contract language contains a latent ambiguity.[2] Wheeler v. Wheeler, Erwin & Fountain, P.A., 964 So.2d 745, 749 (Fla. 1st DCA 2007); Jenkins v. Eckerd Corp., 913 So.2d 43, 52-53 (Fla. 1st DCA 2005). Parol evidence includes “a verbal agreement or other extrinsic evidence where such agreement was made before or at the time of the instrument in question.” J.M. Montgomery Roofing Co. v. Fred Howland, Inc., 98 So.2d 484, 485 (Fla.1957). The parol evidence rule precludes consideration of such evidence “to contradict, vary, defeat, or modify a complete and unambiguous written instrument, or to change, add to, or subtract from it, or affect its construction.” Id. at 486 (citation omitted); see also Allett v. Hill, 422 So.2d 1047, 1050 (Fla. 4th DCA 1982) (finding error in “the admission of parol evidence to add a term to [a] written lease which, whether part of the preliminary negotiations or a separate subsequent condition, plainly violates ... the doctrine of merger and the parol evidence rule”).
The purpose of a merger clause is “to affirm the parties’ intent to have the parol evidence rule applied to their contracts.” Centennial Mortg., Inc. v. SG/SC, Ltd., 772 So.2d 564, 565 (Fla. 1st DCA 2000) (quoting Outlaw v. McMichael, 397 So.2d 1009, 1011 (Fla. 1st DCA 1981)). Generally, a merger clause states “that the contract represents the parties’ complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract.” Jenkins, 913 So.2d at 53 n. 1 (quoting Black’s Law Dictionary, 813 (7th ed. 1999)). This Court has explained the significance of a merger clause as follows:
Although the existence of a merger clause does not per se establish that the integration of the agreement is total, ... a merger clause is a highly persuasive statement that the parties intended the agreement to be totally integrated and generally works to prevent a party from introducing parol evidence to vary or contradict the written terms.

Id.

Appellant argues that the merger clause at issue exists only to establish that the contract cannot be modified orally and that “if it’s not in writing, it did not happen.” This interpretation is inconsistent with the plain language of the clause and the operation of the parol evidence rule, which excludes all evidence extrinsic to a fully integrated contract.[3] See J.M. *266 Montgomery Roofing, 98 So.2d at 485. The RISC’s merger clause does not specifically mention prior written agreements, but it explicitly provides that “this contract” is the “entire agreement” between the parties. As a result, it is immaterial whether any prior representations sought to be excluded are oral or written; anything that does not constitute part of “this contract” is not part of the parties’ agreement related to the contract. Thus, whether the RBO should be considered depends on whether it is part of “this contract” as that phrase is used in the merger clause.
Based on the language of the RISC itself, it is clear that “this contract” refers only to the RISC. By its title, “Retail Installment Sale Contract,” the RISC purports to represent the parties’ contract. More importantly, the RISC does not refer to any other document as part of the contract. As a result, the natural interpretation of the phrase “this contract,” as used in the merger clause, is the document on which the merger clause appears.
Moreover, even when the language of the RBO is considered, this conclusion is supported. The RBO does not refer to itself as a contract; instead, the RBO refers to itself as “this order” throughout the document. For example, the RBO contains a warning to the buyers not to sign until they have read and understood all the terms of “this order.” Thus, the two documents together reveal that “this contract” refers to the RISC, while “this order” refers to the RBO.
Appellant contends that this Court should not consider the RISC a fully integrated document because the RISC does not contain all the essential terms of the agreement. This argument appears to be based on the general principle that “if there has been no agreement as to essential terms, an enforceable contract does not exist.” Irby v. Mem’l Healthcare Grp., Inc., 901 So.2d 305, 306 (Fla. 1st DCA 2005) (citation omitted). By extension of this principle, it stands to reason that if a document does not contain all the essential terms of an agreement, it cannot be considered a fully integrated contract. See Jenkins, 913 So.2d at 53 (“For the parol evidence rule to apply, ‘the written agreement must appear on its face to express an agreement complete in all essential terms.’”) (quoting Gulf Atl. Towing Corp. v. Dickerson, Inc., 271 F.2d 542, 546 (5th Cir.1959)). Appellant claims that only the RBO contains important terms such as the price of the vehicle, the sales tax, the cost of a vehicle maintenance plan, a rebate to the buyers, and the amount of the down payment. To the contrary, the only item on Appellant’s list that is not included in the RISC is the “cost of a vehicle maintenance plan.”[4] However, this item is not an essential term, as such a plan is not required to show that there was an agreement by the buyers to purchase the vehicle and an agreement by the seller to deliver the vehicle. The terms showing such an agreement indicate that there was consideration for the contract. Thus, the contract is complete without discussion of a maintenance plan.
*267 Appellant also argues that case law requires this Court to interpret the term “this contract” as referring to all the documents signed contemporaneously with the RISC in conjunction with the sale of the vehicle. Appellant’s argument is based on the general principle recognized in Dodge City, Inc. v. Byrne, 698 So.2d 1033, 1035 (Fla. 2d DCA 1997), that “[w]hen the parties execute two or more documents concurrently, in the course of one transaction concerning the same subject matter, the documents must be read and construed together.” This principle also requires reconciliation, if possible, of all provisions of the documents that are contemporaneously executed. See id. The Dodge City case also concerned a vehicle purchase transaction and documents similar to the ones at issue in this case. See id. However, the Dodge City opinion does not indicate that the RISC or any other document executed in conjunction with the sale contained a merger clause (or that the parties made an issue of such a clause). See generally id. The parties have not cited any Florida case specifically analyzing whether this principle applies when a document containing a merger clause is executed contemporaneously with other documents.
We find two out-of-state cases persuasive on this point: Krueger v. Heartland Chevrolet, Inc., 289 S.W.3d 637 (Mo.Ct.App.2009); and Patton v. Jeff Wyler Eastgate, Inc., 608 F.Supp.2d 907 (S.D.Ohio 2007). Both jurisdictions follow the principle recognized in Dodge City, but both courts nevertheless required consideration of only the RISC in interpreting the parties’ rights and obligations related to a vehicle purchase transaction. Krueger, 289 S.W.3d at 640; Patton, 608 F.Supp.2d at 915-16.
In Knieger, in conjunction with the purchase of a vehicle, the buyers signed a Retail Buyer’s Order, an Arbitration Addendum to the Retail Buyer’s Order, and a Retail Installment Contract. 289 S.W.3d at 638. The Retail Installment Contract set forth the terms of the agreement based on a credit purchase of the vehicle and did not reference either the Retail Buyer’s Order or the Arbitration Addendum to the Retail Buyer’s Order. Id. The issue was whether the arbitration provision of the Retail Buyer’s Order and its addendum were binding. Id. The Krueger court held that the arbitration agreement was not binding based on the following merger clause in the Retail Installment Contract:
Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.
Krueger, 289 S.W.3d at 639 (emphasis added in Krueger). Based on this language, the Krueger court held that the Retail Installment Contract was intended to supersede the Retail Buyer’s Order and that the Retail Installment Contract was “the only agreement controlling the sale and purchase of the vehicle.” Id. at 640. The Krueger court distinguished a case with similar facts based on the existence of the merger clause. Id.
In Patton, the terms of the retail installment sale contract were strikingly similar to those of the RISC in the instant case. See 608 F.Supp.2d at 908-09. The seller in Patton was identified as the “Creditor-Seller,” and the retail installment sale contract contained an agreement by the buy *268 ers to pay the Creditor-Seller the amount financed according to a payment schedule. Id. The merger clause in Patton was virtually identical to the merger clause at issue in the instant case. Id. at 909. The retail installment contract in Patton also contained the same warning about the lack of a “cooling off period” that the RISC in the instant case contains. Id. In Patton, the buyers also signed a separate “Purchase Spot Delivery Agreement,” indicating the buyers’ understanding that financing was not finalized and that the transaction would be complete upon assignment of the retail installment contract to a third party. Id. This agreement was similar to language contained within the RBO in the instant case. See id.
One of the issues before the Patton court was whether the spot delivery agreement rendered certain disclosures on the retail installment contract illusory. Id. at 913-15. This issue turned on whether the spot delivery agreement was part of the contract. See id. The Patton court concluded that the retail installment contract was a fully integrated contract. Id. at 915. To support this conclusion, the court noted that no language in the retail installment contract made it contingent on approval by or assignment to a third-party lender and that, by its terms, it obligated the buyers to make monthly installment payments to the seller. Id. The court further reasoned that certain provisions of the spot delivery agreement contradicted provisions of the retail installment contract. Id. In particular, the court concluded that the provision in the spot delivery agreement indicating that financing had not been finalized contradicted the terms of the installment contract that identified the seller as the “Creditor-Seller” and gave due dates for payments. Id. Further, the court noted that, although the retail installment contract indicated that the seller “may assign this contract,” it did not make the contract contingent on assignment, as the spot delivery agreement purported to do. Id. The court concluded that the language in the retail installment contract providing for financing on specific terms and payments at specific times would be rendered meaningless if the language in the spot delivery agreement permitting the seller to cancel the contract were in force. Id. These inconsistencies, along with the merger clause, the lack of incorporation by reference of the spot delivery agreement into the retail installment contract, and the purpose of the Truth In Lending Act, which was at issue in that case, led the Patton court to conclude that the general rule requiring consideration of all contemporaneously executed documents did not apply to the retail installment contract. Id. at 915-16.
As noted above, the documents at issue in this case are strikingly similar to those discussed in Patton. Because we agree with the Patton court’s reasoning, we hold that the RISC in the instant case is a fully integrated document, consistent with the plain language of the merger clause.
This conclusion does not end our inquiry because Appellant argues that, even if the RISC is a fully integrated contract, the RBO constitutes a valid change to it. This argument is based on the merger clause’s statement that “any change to this contract must be in writing and [the parties] must sign it.” We do not agree that the RBO constitutes a valid change to the RBO because nothing in the RBO indicates that it was intended as a modification of a pre-existing contract, and the parol evidence rule excludes evidence of other prior or contemporaneous agreements. Rather than indicating that it is a subsequent modification to the RISC, the RBO indicates that it was signed before the RISC, as it states, “The retail installment sales contract (“RISC”) to be entered between Dealer and Customer, unless oth *269 erwise indicated in writing by Dealer, shall be immediately assigned by Dealer to a bank/finance company ... which shall then be the creditor to whom Customer shall be obligated under the RISC.” (emphasis added). Because the RBO indicates on its face that it was signed before the RISC, it cannot be considered a “change” to the contract as that term is used in the merger clause; instead, the language in the RISC indicating that the RISC constitutes the entire agreement controls.
Notably, the RBO appears to incorporate the RISC by reference. See Jenkins, 913 So.2d at 51 (“A document may be incorporated by reference in a contract if the contract specifically describes the document and expresses the parties’ intent to be bound by its terms”) (citation omitted). This factor arguably distinguishes Patton, where neither document incorporated the other by reference. 608 F.Supp.2d at 909. However, this distinction is immaterial. As explained above, the terms of the RISC indicate that the RISC is the controlling instrument. Thus, the important inquiry is whether the RISC incorporates the RBO, not whether the RBO incorporates the RISC. The RISC does not mention the RBO. As a result, the RBO is irrelevant to the disputes arising out of the transaction at issue.
In sum, we affirm the trial court’s decision to deny Appellant’s motion to compel arbitration. This decision was correct because of the merger clause indicating that the RISC constitutes the entire agreement between the parties related to the contract governing the vehicle purchase. Accordingly, the order on appeal is AFFIRMED.
DAVIS, and WETHERELL, JJ„ Concur.

. Appellant suggests that in ruling on a request for rehearing or reconsideration, the trial court abandoned its reliance on the merger clause as the basis for denying the motion. Whether the trial court abandoned its initial reasoning is irrelevant to the disposition of this appeal because, under the tipsy coachman doctrine, if the result the trial court reached was correct for any reason reflected in the record, then it is subject to affirmance. Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) ([I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.).

. A latent ambiguity exists "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.” Barnwell v. Miami-Dade County Sch. Bd., 48 So.3d 144, 145-46 (Fla. 1st DCA 2010) (citation omitted).

. The parol evidence rule is often characterized as excluding evidence of an oral agreement. See, e.g., Jenkins, 913 So.2d at 53; Sears v. James Talcott, Inc., 174 So.2d 776, 778 (Fla. 2d DCA 1965). However, as indicated by the use of the phrase "extrinsic evidence” in J.M. Montgomery Roofing, 98 So.2d at 485, the evidence excluded under the rule includes any evidence outside the instrument that is considered the fully integrated contract. See also Burgan v. Pines Co. of Ga., Ltd., 382 So.2d 1295, 1296 (Fla. 1st DCA 1980) (acknowledging that "the rule precludes evidence of understandings, parol or otherwise, which preceded a final integration of the parties’ contract”); Smith Eng'g & Constr. Co. v. U.S. Fid. & Guar. Co., 199 So.2d 302, 305 (Fla. 1st DCA 1967) ("[W]hen a legal act is reduced into a single writing, all other *266 utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act.... No other language is admissible to show what they meant or intended ....”). (citation omitted).

. Although the RISC does not independently state the price of the vehicle before tax, it states the total price and indicates that this price includes $1,223.48 in sales tax. It also indicates that Appellees received a "MANF Rebate” in the amount of $2,000 and that this amount was the total down payment.