MAY, C.J.
A construction site accident, contractual provisions, and Fabre[1] are the ingredients of this appeal. The defendants argue, among other issues, the trial court erred in entering a summary judgment in favor of the plaintiff on liability. We agree and reverse.
On the day of the accident, the defendant driver was delivering cement to the construction site. Upon entering the site and approaching the dumping area, the driver passed the plaintiff, a flagman working for the general contractor through a temporary work agency. The driver backed the cement truck up to the dumping area and dumped the concrete. A lunch truck then entered the site and parked, impeding the driver’s exit.
The construction foreman, an employee of the general contractor, instructed the driver to move his truck. Although the foreman would instruct trucks to exit the dumping area, he was not responsible for directing the trucks. The driver pulled his truck out from the dumping area and away from the crowd without incident.
The foreman waved the driver to back out. The driver checked his mirrors and proceeded to back up while the foreman remained in front of the truck. The driver was unable to see behind his truck using the video monitor. A witness to the accident testified that the driver backed up at a regular speed. The witness confirmed the foreman continued to wave for the driver to back up.
Testimony also revealed that it was industry standard for the general contractor to direct concrete trucks in and out of the construction site. It was also standard for the general contractor to provide traffic control on a public street. The subcontractor’s drivers were instructed to follow the directions of the general contractor.
The plaintiff, who was in charge of directing traffic at the time of the accident, was the only flagman on the street. It was his job to direct pedestrian traffic and trucks entering and exiting the job site, but at the time of the accident, he was turned away from the truck. When the plaintiff turned around, the truck was three to four feet away. He did not hear the backup indicator. He only heard the truck backing up quickly, and someone say “you’re through, you can leave.” As the driver backed up, the truck struck the plaintiff, spun him around, and ran over his legs. The driver exited the truck and observed the plaintiff pinned under the truck’s two rear driver’s side wheels.
The plaintiff filed a complaint against the subcontractor and its driver, alleging that they negligently caused the accident. The subcontractor and driver ultimately served an amended answer and affirmative defenses. The plaintiff moved to strike two affirmative defenses, which asserted the plaintiffs comparative negligence and listed the temporary work agency, the general contractor, and the foreman as non-party defendants under Fabre.
While the motion to strike was pending, the plaintiff filed a motion for summary judgment and/or to preclude in limine, which argued the subcontractor and driver could not request an apportionment of *162 fault because the subcontractor had assumed responsibility for worker safety under its agreement with the general contractor, was vicariously liable, and had a non-delegable duty under the dangerous instrumentality doctrine. Defense counsel argued the plaintiff and non-party defendants were negligent and the jury .should be allowed to apportion fault because genuine issues of fact remained.
The trial court entered an order, concluding the defendants were not entitled to have the jury apportion fault because: (1) the contract between the general contractor and subcontractor placed the responsibility for safety on the subcontractor; and (2) the subcontractor had a non-delegable duty to operate the truck with due regard for the safety of other workers in the area. The court granted the plaintiffs motion to strike and entered a summary judgment in favor of the plaintiff on liability.
The trial on damages resulted in a verdict of $6,590,891 in favor of the plaintiff. The defendants filed an amended motion for new trial and/or remittitur. The trial court denied the motion. The defendants filed an amended notice of appeal, seeking review of the final judgment and the order denying the amended motion for new trial.
On appeal, the driver and subcontractor argue the trial court erred in striking their comparative negligence and Fabre defenses and entering summary judgment on liability. The plaintiff responds that the subcontractor and driver waived this argument by admitting liability during .the trial. Alternatively, the plaintiff argues that two provisions in the agreement between the subcontractor and general contractor, coupled with the dangerous instrumentality doctrine, prohibit an apportionment of fault among the parties and non-parties. We find, without further comment, the issue was preserved. We further hold that neither the contractual provisions nor existing case law prevented the jury from apportioning fault.
Our review of this summary judgment is de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
Section 768.81, Florida Statutes (2007), provides for comparative fault and apportionment of damages in negligence cases:
(2) EFFECT OF CONTRIBUTORY FAULT. — In an action to which this section applies, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant’s contributory fault, but does not bar recovery.
(3) APPORTIONMENT OF DAMAGES. — In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party’s percentage of fault and. not on the basis of the doctrine of joint and several liability.
(a) In order to allocate any or all fault to a nonparty, a defendant must affirmatively plead the fault of a nonparty and, absent a showing of good cause, identify the nonparty, if known, or describe the nonparty as specifically .as practicable, either by motion or in the initial responsive pleading when defenses are first presented....
(b) In order to allocate any or all fault to a nonparty and include the named or unnamed nonparty on the verdict form for purposes of apportioning damages, a defendant must prove at trial, by a preponderance of the evidence, the fault of the nonparty in causing the plaintiffs injuries.
*163 § 768.81(2)-(3), Fla. Stat. (2007). In Fa-bre, our supreme court held that the statute is unambiguous:
The “fault” which gives rise to the accident is the “whole” from which the fact-finder determines the party-defendant’s percentage of liability. Clearly, the only means of determining a party’s percentage of fault is to compare that party’s percentage to all of the other entities who contributed to the accident, regardless of whether they have been or could have been joined as defendants.
623 So.2d at 1185 (emphasis supplied). Thus, the subcontractor and driver were entitled to an apportionment of fault regardless of who is ultimately liable for damages. The plaintiff argues that two contractual provisions in the agreement between the subcontractor and the general contractor somehow disentitled the defendant to such an apportionment. We think not.
The two relevant provisions in the agreement concern accident prevention and indemnity, and provide:

ARTICLE XXVI: ACCIDENT PREVENTION

26.1 Subcontractor agrees that the prevention of accidents and injuries to workmen engaged in the Work under this Agreement is the responsibility of Subcontractor. Subcontractor agrees to comply with all laws, regulations and codes concerning safety as shall be applicable to the Work and to the safety standards established during the progress of the Work by Contractor. When so ordered, Subcontractor agrees to stop any part of the Work, which Contractor deems unsafe until corrective measures satisfactory to Contractor have been taken, and further agrees to make no claim for damages growing out of such stoppages. Should Subcontractor neglect to adopt such corrective measures, Contractor may perform them and deduct the cost from payments due or to become due Subcontractor. Failure on the part of Contractor to stop unsafe practices shall, in no way, relieve Subcontractor of its responsibilities.
[[Image here]]

ARTICLE XXXII: INDEMNIFICATION

32.1 Subcontractor agrees to indemnify, defend and hold harmless Contractor and Owner and their respective officers, representatives and employees, from any claim, liability, damage, loss, judgment or cost, ... arising out of or in any manner pertaining to this Agreement or the Work hereunder caused) in-whole or in part, by an act, omission or default of Subcontractor or any of Subcontractors’ sub-Subcontractors or suppliers of any tier or their respective employees or representatives, whether- or not caused in part by any act, omission or default of Contractor. However, such indemnification shall not include claims of, or damages resulting from, gross negligence, or willful, wanton, or intentional misconduct of the Contractor, or its officers, directors, agents, or employees, or for statutory violation or punitive damages except and to the extent the statutory violation or punitive damages are caused by or result from the acts or omissions of Subcontractor or any of its sub-Subcontractors, materialmen, or agents of any tier or their respective employees. Liability under *164 this subsection shall not exceed $3,000,000.00, the parties acknowledging that such amount bears a reasonable commercial relationship to this Agreement.
(Emphasis added)[2].
“In construing a contract, [we] should consider its plain language and take care not to give the contract any meaning beyond that expressed. When the language is clear and unambiguous, it must be construed to mean ‘just what the language therein implies and nothing more.’ ” Walker v. State Farm Fire & Cas. Co., 758 So.2d 1161, 1162 (Fla. 4th DCA 2000) (quoting Walgreen Co. v. Habitat Dev. Corp., 655 So.2d 164, 165 (Fla. 3d DCA 1995)) (internal citation omitted). And “‘[we are] not empowered to rewrite a clear and unambiguous provision, nor should [we] attempt to make an otherwise valid contract more reasonable for one of the parties.’ ” Rodriguez v. Builders Firstsource-Florida, LLC, 26 So.3d 679, 682 (Fla. 4th DCA 2010) (quoting N. Am. Van Lines v. Collyer, 616 So.2d 177, 179 (Fla. 5th DCA 1993)).
First, it should be noted that neither the plaintiff nor the driver was a party to the agreement, so its provisions have no affect on the apportionment of fault between those individuals. Second, as to the subcontractor, the first provision merely requires the subcontractor to prevent accidents and injuries “to workmen engaged in the Work under this Agreement,” and to adhere to safety regulations and standards.
The remaining sentences of the provision make clear that the general contractor has the ultimate supervisory responsibility for ensuring safety and regulatory compliance. This supervision extends to the extent that the general contractor can order the work stopped if it is deemed unsafe, and the general contractor can undertake the work itself if needed to render the workplace safe. The provision does NOT make the subcontractor solely responsible for all safety on the worksite, thereby precluding the apportionment of fault for an accident.
The general indemnity provision provides for the subcontractor to indemnify the general contractor and owner from loss resulting from the subcontractor’s acts or omissions. It does NOT provide for the subcontractor to indemnify the general contractor for loss resulting from the general contractor’s own acts or omissions. Indeed, Florida law “view[s] with disfavor contracts that attempt to indemnify a party against its own negligence.” Zeiger Crane Rentals, Inc. v. Double A Indus., Inc., 16 So.3d 907, 914 (Fla. 4th DCA 2009) (citing Charles Poe Masonry Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla.1979)). We also note the trial court did not address this provision in rendering the summary judgment.
Even so, when these two passages are read together, their language reveals the parties’ intent to require the subcontractor to work safely in accordance with safety regulations and standards, leaving the supervision of the safe workplace to the general contractor. Should the subcontractor cause a loss due to its own negligence, then it agreed to indemnify the general contractor to the extent of three million dollars.
Lastly, the subcontractor and driver argue the trial court erroneously relied on the dangerous instrumentality and vicarious liability doctrines in granting summary judgment. The plaintiff responds the trial court properly struck the defen *165 dants’ affirmative defense based on those doctrines. Once again, we agree with the subcontractor and driver.
The dangerous instrumentality doctrine renders an owner strictly liable for injuries caused by someone to whom the owner entrusts the vehicle. Salsbury v. Kapka, 41 So.3d 1103, 1104 (Fla. 4th DCA 2010). Here, the subcontractor entrusted the vehicle to the driver, and therefore has a non-delegable duty to the plaintiff as it relates to the driver. However, that non-delegable duty does not disentitle the subcontractor to an apportionment of fault among other parties and non-parties to whom the defendant did not entrust the vehicle, such as: the general contractor, its foreman, the plaintiff, and the temporary work agency.
The plaintiff correctly argues that apportionment of fault under Fabre does not apply when liability is vicarious in nature. In support, the plaintiff cites Grobman v. Posey, 863 So.2d 1230 (Fla. 4th DCA 2003); Suarez v. Gonzalez, 820 So.2d 342 (Fla. 4th DCA 2002); and Nash v. Wells Fargo Guard Services, Inc., 678 So.2d 1262 (Fla.1996). The problem with the plaintiffs argument is not in its premise, but in its application. Neither the subcontractor nor the driver is vicariously liable for the general contractor, the foreman, the plaintiff, or the temporary work agency. Thus, Grobman, Suarez, and Nash do not support the trial court’s summary judgment.
A distinction must be drawn between apportionment of fault and ultimate liability. The former allows the finder of fact to determine to what extent, if any, each party or non-party contributed to the loss or injury. The latter determines who will actually pay for that loss or injury. The combination of both insures responsibility for one’s own negligence, and ultimately who will pay — and to what extent of — the total loss.
By striking the affirmative defenses and entering a summary judgment on liability, the trial court deprived the subcontractor and driver from having a jury apportion fault. For this reason, we reverse and remand the case for a trial on liability and damages. Cf. City of Winter Haven v. Allen, 541 So.2d 128, 138 (Fla. 2d DCA 1989) (“We have considered the propriety of ... a limited retrial and determine that all issues in this case are too interwoven to make such a limited retrial appropriate.”).[3]

Reversed and Remanded for a New Trial.

DAMOORGIAN and GERBER, JJ., concur.

. Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), receded from on other grounds, Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 659 So.2d 249, 254 (Fla. 1995).

. The bold font and strikethrough appeared in the actual agreement.

. We have reviewed Barrientos v. Hyre, 805 So.2d 981 (Fla. 2d DCA 2001); Nash v. Wells Fargo Guard Seivices, Inc., 678 So.2d 1262 (Fla.1996); and Griefer v. DiPietro, 625 So.2d 1226 (Fla. 4th DCA 1993), cited by the plaintiff, before determining that a trial on both liability and damages is warranted in this case.