**Reversed and Rendered and Memorandum Opinion filed March 3, 2015.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-14-00238-CV

**MODIS, INC, Appellant**

**V.**

**NET MATRIX SOLUTIONS, INC., Appellee**

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 1015435**

## M E M O R A N D U M   O P I N I O N

Following a bench trial, Modis, Inc. appeals a judgment in favor of Net Matrix Solutions, Inc. on Net Matrix's breach-of-contract claim. We reverse the trial court's judgment and render a take-nothing judgment in favor of Modis.

### BACKGROUND

Modis and Net Matrix are consulting companies that provide individuals possessing technical expertise for specific computer-related projects. Net Matrix's president testified that his company employs approximately 30 computer

consultants that it hires out to other companies. Net Matrix generates revenue based on the difference between what it pays the consultants and what it charges for supplying them to other companies. Net Matrix sometimes provides consultants as a subcontractor for other computer consulting companies that contract directly with end-users. Net Matrix protects its revenue through contract terms restricting the ability of a general contractor or an end-user to hire Net Matrix's consultants directly.

Net Matrix signed a "Subcontractor Agreement" with Modis on March 4, 2011, to provide computer consulting employees to Modis's client LyondellBasell. The contract defined Modis as "Contractor," Net Matrix as "Subcontractor," and LyondellBasell as "Client."

The Net Matrix-Modis contract states several restrictive terms, including the following:

> [8]C. Subcontractor agrees that during the term of this Agreement and for six (6) months thereafter, Subcontractor shall not, without the prior written consent of Contractor, allow or cause any Subcontractor Personnel (who worked for Subcontractor at any time within the twelve (12) months preceding the latter of the termination of this Agreement or the final completion of service) to provide work or services to Client, through Subcontractor directly or through any other person or entity.

> [8]D. Subcontractor agrees that during the term of this Agreement and for six (6) months thereafter, Subcontractor and Subcontractor Personnel shall not, without the prior written consent of Contractor, directly or indirectly, solicit or hire any employee or contractor of Client or Contractor.

> [8]F. During the term of this Agreement, Contractor agrees it shall not recruit, hire or otherwise solicit Subcontractor's Personnel assigned to perform services hereunder.

Net Matrix employed Ravikant Nistane as a computer consultant and provided him

2

to LyondellBasell pursuant to the Subcontractor Agreement between Net Matrix and Modis. Nistane resigned from Net Matrix on January 31, 2012, and obtained employment at Millennium, Inc., another computer consulting company.

Millennium had a subcontractor agreement with Modis to provide computer consulting services to LyondellBasell. Millennium provided Nistane to LyondellBasell pursuant to Modis's and Millennium's subcontractor agreement beginning in February 2012. Modis also signed a contract with Millennium agreeing that Nistane would provide services to LyondellBasell, and Modis confirmed Nistane's employment on the LyondellBasell project for Nistane's visa application. From February 2012 until trial in October 2014, Nistane provided computer consulting services to LyondellBasell as an employee of Millennium pursuant to Modis's and Millennium's subcontractor agreement.

Net Matrix's president testified that Nistane told him in November 2011 that he was leaving Net Matrix and the LyondellBasell project for a job with Staples in Boston, Massachusetts. The trial court admitted a series of emails in which Nistane wrote Net Matrix's president and a Modis representative that he was leaving the LyondellBasell project. The Modis representative testified that he knew Nistane's statement was untrue, but did not correct the statement for Net Matrix's benefit.

Net Matrix sued Modis for breach of contract in connection with Nistane's departure from Net Matrix's employment. Net Matrix alleged that Modis breached Subcontractor Agreement paragraph 8F by "continuing to utilize Nistane's services for the LyondellBasell project" after Nistane left Net Matrix.

The trial court signed a judgment in favor of Net Matrix on January 7, 2014, after a bench trial, and awarded Net Matrix $63,840 in damages. This amount represented the profit Net Matrix asserted it would have made had Nistane

remained a Net Matrix employee and continued working on the LyondellBasell project.

The trial court made findings of fact and conclusions of law. It found:

> Although Nistane had informed Net Matrix that he would be leaving the LynondellBassell [*sic*] project, Nistane in fact remained on the same project and continued to work on the project through a subcontractor other than Net Matrix. From the date he left the employ of Net Matrix to the date of trial, Nistane was employed by a subcontractor of Modis for the benefit of Modis on the LyondellBassell [*sic*] project.

The court concluded:

> In continuing to utilize Nistane's services for the LyondellBasell project after he resigned from Net Matrix, Modis breached paragraph 8(F) [*sic*] of the Subcontractor Agreement, which provides: 'During the term of this Agreement, Contractor agrees that [*sic*] it shall not recruit, hire or otherwise solicit Subcontractor's Personnel assigned to perform services hereunder.'

Modis timely appealed.

## ANALYSIS

In four issues Modis contends (1) the damages awarded are speculative and not recoverable; (2) the record does not establish that Modis breached paragraph 8F of the Subcontractor Agreement; (3) paragraph 8F is an unenforceable restraint of trade; and (4) Net Matrix caused its own damages by not taking any action against Nistane. We address only Modis's second issue because it is dispositive of this appeal.

Modis challenges the trial court's determination that Modis breached paragraph 8F by allowing Millennium to provide Nistane to LyondellBasell pursuant to Modis's and Millennium's subcontractor agreement. Modis does not

4

specifically challenge the trial court's findings of fact, and our review of the record confirms that the findings are supported by adequate evidence; therefore, we are bound by the trial court's findings. *See Reich & Binstock, LLP v. Scates*, No. 14-13-00906-CV, 2014 WL 6851606, at *3 (Tex. App.—Houston [14th Dist.] Dec. 4, 2014, no. pet. h.) (unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the findings). We review the trial court's legal conclusions *de novo* to determine whether the conclusions drawn from the facts are correct. *See id.*; *Zagorski v. Zagorski*, 116 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g).

The parties do not dispute that the Subcontractor Agreement signed by Modis, a Florida corporation, contains a Florida choice-of-law provision and is governed by Florida law. We respect contracting parties' choice-of-law decisions if the parties' issue in dispute can be resolved by an explicit contract provision. *See Exxon Mobil Corp. v. Drennen*, No. 12-0621, 2014 WL 4782974, at *3 (Tex. Aug. 29, 2014); *McKeehan v. McKeehan*, 355 S.W.3d 282, 291 (Tex. App.—Austin 2011, pet. denied). Modis's and Net Matrix's dispute can be resolved by our construction of paragraph 8F; therefore, we apply Florida law. *See McKeehan*, 355 S.W.3d at 291; *Ill. Tool Works, Inc. v. Harris,* 194 S.W.3d 529, 532 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (applying Illinois principles of contract construction to resolve a contract dispute).

The Subcontractor Agreement addresses the hiring of employees in multiple places. Paragraphs 8C and 8D address the hiring of a Contractor's employees by a Subcontractor. Paragraph 8C states:

> Subcontractor agrees that during the term of this Agreement and for six (6) months thereafter, Subcontractor shall not, without the prior written consent of Contractor, allow or cause any Subcontractor

5

Personnel (who worked for Subcontractor at any time within the twelve (12) months preceding the latter of the termination of this Agreement or the final completion of service) to provide work or services to Client, through Subcontractor directly or through any other person or entity.

Paragraph 8D states:

Subcontractor agrees that during the term of this Agreement and for six (6) months thereafter, Subcontractor and Subcontractor Personnel shall not, without the prior written consent of Contractor, directly or indirectly, solicit or hire any employee or contractor of Client or Contractor.

In contrast, paragraph 8F addresses the hiring of a Subcontractor's employees by a Contractor. Paragraph 8F states:

During the term of this Agreement, Contractor agrees it shall not recruit, hire or otherwise solicit Subcontractor's Personnel assigned to perform services hereunder.

Paragraph 8F controls here in connection with a dispute about whether Contractor Modis violated the agreement based upon its conduct involving an employee of Subcontractor Net Matrix.

Modis argues that, while paragraph 8F prohibited it from hiring Nistane directly during the term of the agreement, the parties did not intend the term "hire" in paragraph 8F to encompass the situation in this case. Instead of being hired by Modis, Nistane was hired by a Modis subcontractor; in turn, that subcontractor provided Nistane to LyondellBasell. Modis argues that if the parties had intended to prohibit Modis from "indirectly hiring" Nistane in this manner, then the parties could have prohibited indirect hiring through specific contract language as they did in paragraphs 8C and 8D.

Net Matrix counters that Modis's actions satisfy the meaning of "hire" as

6

used in paragraph 8F.[1]  It argues that Modis's breach is established by (1) the acknowledgement of Modis's vice president that Modis hired Nistane; (2) Nistane's false statement about leaving LyondellBasell for a job at Staples and Modis's failure to correct this statement; and (3) Florida and federal employment law recognizing that an employer may hire an employee indirectly.

Under Florida law, the intent of the parties to a contract governs construction. *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 197 (Fla. 1992). "Where the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document." *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011). In such a situation, the language of the contract is the best evidence of the parties' intent and its plain meaning controls. *Id.*

The interpretation of a contract, including whether the contract or one of its terms is ambiguous, is a question of law. *Real Estate Value Co. v. Carnival Corp.*, 92 So. 3d 255, 260 (Fla. Dist. Ct. App. 2012). Courts should read provisions of a contract harmoniously in order to give effect to all provisions. *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000); *Sch. Bd. of Broward Cnty. v. Pierce Goodwin Alexander & Linville*, 137 So. 3d 1059, 1066 (Fla. Dist. Ct. App. 2014) ("In interpreting a contract, the court must review the contested phrases or words as part of the whole contract, rather than looking at the words or phrases

---

[1] Paragraph 8F states that Modis shall not "recruit, hire or otherwise solicit" Net Matrix's personnel. We do not consider whether Modis breached paragraph 8F by "recruit[ing]" or "otherwise solicit[ing]" Nistane because Net Matrix has not argued that Modis breached the contract by anything other than "hir[ing]" Nistane. Net Matrix asserted in its petition that Modis violated paragraph 8F by "continuing to utilize Nistane's services for the LyondellBasell project" after Nistane left Net Matrix. Net Matrix also contended at oral argument that Modis satisfied the meaning of "hire" by facilitating Nistane's move to Millennium; signing a contract with Millennium for Nistane's services on the LyondellBasell project; and attesting to Nistane's employment on the project for his visa application.

separately."). Contractual language is ambiguous if it is susceptible to more than one reasonable interpretation. *Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 385-86 (Fla. Dist. Ct. App. 2014). "However, '[a] true ambiguity does not exist merely because a contract can possibly be interpreted in more than one manner. Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible. It is the duty of the trial court to prevent such interpretations.'" *BKD Twenty-One Mgmt. Co. v. Delsordo*, 127 So. 3d 527, 530 (Fla. Dist. Ct. App. 2012) (quoting *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 7 (Fla. Dist. Ct. App. 1984)). "[W]here one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner." *BKD Twenty-One Mgmt. Co.*, 127 So. 3d at 530.

We determine that paragraph 8F is unambiguous; the term "hire" encompasses direct action only. Our interpretation harmonizes Subcontractor Agreement paragraphs 8C, 8D, and 8F, and gives effect to all contract provisions. The phrases "through any other person or entity" in paragraph 8C and "directly or indirectly" in paragraph 8D signal the parties' intent that prohibited actions include indirect action only where explicitly provided. To hold otherwise would render these phrases meaningless. *See City of Homestead*, 760 So. 2d at 84. Paragraph 8F does not include language stating that indirect action is prohibited; therefore, we determine that paragraph 8F does not prohibit indirect action. *See id.*

Under Florida law, when the language of a contract is clear and unambiguous, a court cannot entertain evidence contrary to its plain meaning. *Crawford*, 64 So. 3d at 1255 (citing *Sheen v. Lyon*, 485 So. 2d 422, 424 (Fla. 1986)); *see also Levitt v. Levitt*, 699 So. 2d 755, 757 (Fla. Dist. Ct. App. 1997) ("It is only when a term in [an] agreement is ambiguous or unclear that the trial court may consider extrinsic evidence as well as the parties' interpretation of the contract

8

to explain or clarify the ambiguous language."); *Duval Motors Co. v. Rogers*, 73 So. 3d 261, 265 (Fla. Dist. Ct. App. 2011) ("The parol evidence rule precludes consideration of such evidence to contradict, vary, defeat, or modify a complete and unambiguous written instrument, or to change, add to, or subtract from it, or affect its construction.") (internal quotation marks omitted).

Net Matrix asks us to consider testimony from Modis's vice president that Modis hired Nistane.[2] Net Matrix also asks us to consider Nistane's false statement about leaving LyondellBasell for a job at Staples and Modis's failure to disclose to Net Matrix that it knew the statement to be false. We do not consider this testimony in interpreting paragraph 8F because we determine the language of paragraph 8F to be clear and unambiguous. *See Crawford*, 64 So. 3d at 1255; *see also Cont'l Fla. Materials v. Kusherman*, 91 So. 3d 159, 164 (Fla. Dist. Ct. App. 2012) ("We are not empowered to rewrite a clear and unambiguous provision, nor should we attempt to make an otherwise valid contract more reasonable for one of the parties.") (internal quotation marks and brackets omitted).

Net Matrix cites cases construing the Florida workers' compensation statute, the Fair Labor Standards Act, and the Seasonal Agricultural Worker Protection Act for the proposition that an employer may hire an employee indirectly. *See Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996); *Orama v. Dunmire*, 552 So. 2d 924 (Fla. Dist. Ct. App. 1989); *Stone v. Buckley*, 132 So. 2d 613 (Fla. Dist. Ct. App.

---

[2] Excerpts from the deposition transcript of Modis's vice president were admitted at trial. The excerpts show the following exchange:

[NET MATRIX'S COUNSEL]: At some point a contract was signed between Modis and Millennium for Mr. Nistane's services?

[MODIS'S VICE PRESIDENT]: Yes.

[NET MATRIX'S COUNSEL]: So at some point in time, though you may not know the exact date, Modis did hire Mr. Nistane through Millennium?

[MODIS'S VICE PRESIDENT]: Yes.

1961).   The parties, however, do not dispute that an individual may hire an employee indirectly.  Indeed, the parties prohibited indirect hiring in paragraph 8D. Net Matrix has not explained how the statutory provisions at issue in the cases it cites parallel the language of paragraph 8F.

Modis's conduct is not actionable for breach of contract on this record as a matter of law in light of paragraph 8F's unambiguous language as construed under Florida law.   At most, the evidence shows that Millennium hired Nistane and provided him to LyondellBasell pursuant to Modis's and Millennium's subcontractor agreement.   Modis signed a contract with Millennium, and Modis attested to Nistane's employment on the project for his visa application.   Even if this conduct could be characterized as "indirectly" hiring under the broader terminology in paragraph 8D, it does not come within paragraph 8F's narrower prohibition under which Modis agreed not to "hire" Net Matrix's personnel.   We sustain Modis's second issue.[3]

## CONCLUSION

The trial court erred in signing a judgment in favor of Net Matrix on Net Matrix's breach-of-contract claim.   We reverse the trial court's judgment and render a take-nothing judgment in favor of Modis.


/s/     William J. Boyce
Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.

---

[3] Modis also argues that the trial court erred in admitting hearsay evidence.  We need not address this contention in light of the resolution above.

10