793 So.2d 1129 (2001)
Stanley E. STRAMA, III, Appellant,
v.
UNION FIDELITY LIFE INSURANCE COMPANY, Appellee.
No. 1D00-3468.
District Court of Appeal of Florida, First District.
September 11, 2001.
*1130 Brandon S. Peters of Morgan, Colling & Gilbert, P.A., Orlando, for Appellant.
Kenneth H. Haney and A. Graham Allen of Allen, Brinton & McCarthy, P.A., Jacksonville, for Appellee.
KAHN, J.
The question in this case is whether the circuit court erred by applying the workers' compensation concept of "permanent total disability" to a claim brought by appellant under a credit disability insurance policy rather than recognizing an ambiguity in the policy. Finding that the trial court erred by failing to apply the correct law, we reverse the summary judgment and remand this case for further proceedings.
On December 19, 1995, Appellant Stanley Strama (Strama) bought a credit disability insurance policy from Appellee Union Fidelity Life Insurance Company (Union Fidelity) in connection with the credit purchase of an automobile. On August 2, 1996, Strama bought a second identical policy from Union Fidelity in connection with the credit purchase of a second automobile. The policies provided that Union Fidelity would pay Strama's monthly car payment if he became totally disabled while the insurance was in effect. Both policies define "totally disabled" as having a:
disability which (a) begins while your disability insurance is effective; (b) is the result of injury or sickness; (c) results in loss of time from your occupation or employment; (d) continues without interruption for the number of days stated in the Waiting Period in the schedule. It shall also mean during the first 12 months of covered disability, you are unable to perform the duties of the occupation in which you were engaged when your disability began; and after you have been disabled for 12 months, you are unable to engage in any occupation for which you are reasonably qualified. By reasonably qualified, we mean an occupation for which you have experience, education, or training.
On December 4, 1996, Strama injured himself while lifting a 50-pound package from an overhead shelf at the auto parts store where he worked. Strama underwent a cervical diskectomy and fusion on January 24, 1997, to relieve pressure from a damaged disk in his neck. Immediately following surgery, Strama experienced the sudden onset of pain in his right arm and he claims to have constant pain in his right arm and shoulder. According to Strama's primary treating physician, Dr. Mark C. Hofmann, Strama reached maximum medical improvement on or before July 16, 1997. Dr. Hofmann also assigned Strama permanent work restrictions including (1) no more than thirty hours work per week; (2) no lifting of greater than 20 pounds; (3) no repetitive push/pull activities or motions; and (4) the ability to change positions frequently. Dr. Hofmann has never found Strama's complaints of constant pain to be exaggerated or unbelievable.
Strama filed claims for credit disability benefits, which Union Fidelity received on January 7, 1997. Union Fidelity paid benefits from January 10, 1997, until November 12, 1998. Union Fidelity discontinued payments as of November 13, 1998, because their review of Strama's work restrictions indicated that Strama was no longer totally disabled pursuant to the terms of the insurance contract.
In July 1998, the Social Security Administration found that Strama was disabled under the terms of the Social Security Act *1131 and Strama began receiving benefits. Starting in the last quarter of 1999, Strama began working part-time for a title loan company. Strama claims this work is sporadic at best because his continuing pain limits the time he can work. Strama also claims that he is only able to work approximately six hours per week. Strama's boss at the title loan company stated that he usually pays Strama seven dollars per hour. Strama's canceled paychecks and paystubs indicate that, if he was paid seven dollars per hour, he worked an average of thirty hours per week between October 1999 and May 2000.
Strama sued Union Fidelity for breach of contract. Union Fidelity moved for summary judgment contending, as a matter of law, that Strama could not meet the policy definition of total disability. In the course of discovery, Union Fidelity provided responses bearing on the policy definition. Union Fidelity's corporate representative testified at a deposition that under the terms of this credit disability policy, part-time employment does not "automatically disqualify" an insured from receiving credit disability payments. The same corporate representative, reviewing Union Fidelity's claims manual, observed that under the terms of the manual, part-time employment does not necessarily disqualify an individual from receiving benefits. In interrogatory answers, Union Fidelity clarified the meaning of "part-time work" in the claims manual:
"Part-time" work is generally considered to be work at any occupation in excess of zero hours per week up to thirty hours per week.
Finally, Union Fidelity answered an interrogatory asking whether an insured would have a total disability within the meaning of the applicable policies if the insured worked less than thirty hours per week. In this answer, Union Fidelity stated, "as the number of hours per week an insured is working increases, the less likely it is that the insured has a `total disability' as that term is defined under the referenced certificate of insurance form."
Noting the testimony of Dr. Hofmann that Strama was capable of part-time employment, and further noting that Strama had in fact worked part-time and continued to work part-time, the circuit court found an absence of disputed issues of fact and construed the policy language at issue as follows:
"The court finds that the only reasonable construction of the language "totally disabled" in the contract means that the Plaintiff is unable to engage in any part-time or full-time occupation for which he is reasonably qualified. This is consistent with the law as it relates to the area of worker's compensation which, although not identical to the issues in the instant case, is sufficiently related that the Court should consider the cases decided thereunder. In United States Fidelity and Guaranty Association v. Kemp, 658 So.2d 1212 (Fla. 1st DCA 1995), the Court concluded that "... an ability to work part-time contradicts the conclusion that one is totally disabled." Comparing the definitions in the worker's compensation statute with that in the contracts in the instant case, this Court finds no reason to reach a different conclusion. Consequently, this court finds that because the Plaintiff was able to engage in part-time employment from at least the date that his benefits were terminated under the insurance contract to the present date, he is not entitled to receive the "total disability" benefits under the contract...."
The trial court implicitly rejected appellant's argument that the term "occupation," as used in the policy, was ambiguous.
*1132 The interpretation of a contract is a matter of law to be determined by the court. See DEC Elec., Inc. v. Raphael Constr. Corp., 558 So.2d 427, 428 (Fla. 1990). Nevertheless, when the terms of the contract are ambiguous, susceptible to different interpretations, parol evidence is admissible to "explain, clarify or elucidate" the ambiguous term. Friedman v. Va. Metal Prods. Corp., 56 So.2d 515, 517 (Fla. 1952). The initial determination of whether the contract term is ambiguous is a question of law for the court, and, if the facts of the case are not in dispute, the court will also be able to resolve the ambiguity as a matter of law. See Ellenwood v. Southern United Life Ins. Co., 373 So.2d 392, 394 (Fla. 1st DCA 1979). However, "[w]here the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment." Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc., 513 So.2d 218, 219 (Fla. 1st DCA 1987).
Summary judgment is appropriate "only if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Menendez v. Palms West Condo. Ass'n, 736 So.2d 58, 60 (Fla. 1st DCA 1999). When "there is a genuine issue of material fact as to the interpretation that the parties gave the ambiguous contract provision," summary judgment is inappropriate. Hancock v. Brumer, Cohen, Logan, Kandell & Kaufman, 580 So.2d 782, 784 (Fla. 3d DCA 1991).
Here, the trial court did not apply the correct law to the terms of these contracts. Florida law does not support the trial court's conclusion that the workers' compensation concept of total disability should be applied to a disability insurance contract. In our workers' compensation jurisprudence, "an ability to work part-time contradicts the conclusion that one is totally disabled." Kemp, 658 So.2d at 1213. Workers' compensation law does not apply the occupational disability test contained in this insurance contract. Instead, under workers' compensation law, a claimant seeking a permanent total disability award must demonstrate inability to engage in any meaningful employment. See id.; see also Wal-Mart Stores, Inc. v. Liggon, 668 So.2d 259 (Fla. 1st DCA 1996). The trial court erred by focusing upon the workers' compensation definition of total disability, rather than the provisions of the contract requiring that the insured be unable to engage in any occupation for which the insured is reasonably qualified.
Further, the trial court overlooked case law that is more applicable to the present case and is useful in examining the construction of the concept of total disability and the word "occupation." In New York Life Insurance Co. v. Lecks, the policy at issue defined total disability "to be such injury or disease as to prevent the insured `thereby from engaging in any occupation whatsoever for remuneration or profit.'" 122 Fla. 127, 165 So. 50, 51 (Fla.1935). The Lecks court explained that the definition of total disability in the policy was qualified by reference to the insured's inability to engage in any occupation for remuneration or profit:
A person may be injured or diseased to such an extent as to prevent him from engaging in an occupation for remuneration or profit, but which would not prevent *1133 an occasional subsidiary employment or avocation.
The term `occupation' is itself a relative one, having relation to one's capabilities. A person whose occupation is that of merchant, or mechanic, or day laborer, who becomes `wholly disabled' from engaging in his occupation, might nevertheless, after years of preparatory study and mental training, follow some gainful occupation, but, until that end is accomplished and the insured is receiving profits or remuneration from his new vocation, the insurance company carrying the insurance for the injured person would not under a clause like the one included in the policies in this case be justified in refusing the monthly benefit payments on the possibility of the insured ultimately obtaining profits from following a different occupation from that which he was engaged in when the policy was written. Nor would it be justified in discontinuing the monthly disability payments so soon as the injured person recovered partially from his injuries enough to enable him to occasionally render some small service related or unrelated to his occupation.
165 So. at 52. The supreme court in Lecks also explained that "the application of the disability clause in any case is under proper pleadings one of fact and not of law." Id.
More recently, the supreme court considered the meaning of "inability to engage in your occupation" within the context of a disability policy. Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997). Relying upon Firemans Fund Ins. Co. v. Boyd, 45 So.2d 499 (Fla.1950), the court observed a longstanding tenet of Florida insurance law that "an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer." Adelberg, 698 So.2d at 830. The Adelberg court went on to cite "commonly accepted definitions" of occupation:
Our conclusion is further bolstered by the definition of the term "occupation" in the American Heritage College Dictionary 944 (3d ed.1993) as "[a]n activity that is one's regular source of livelihood; a vocation." Similarly, Merriam-Webster's Collegiate Dictionary 804 (10th ed.1994) defines occupation as "the principal business of one's life; VOCATION."
Id. at 831.
We conclude from our review of Lecks and Adelberg that the Florida Supreme Court does not consider the term "any occupation" to be synonymous with the term "any employment." Accordingly, we cannot accept the contention advanced by Union Fidelity that the ability to do part-time work, as a matter of law, demonstrates Strama's ability to engage in an occupation.
We agree with Strama that the definition of occupation is, on the facts of this case, ambiguous. See DEC Elec., Inc., 558 So.2d at 428. In reaching this conclusion, we have considered the materials and evidence adduced during discovery in this case. We conclude that the insurance company's statements render the phrase "any occupation" as used within the policy ambiguous, and certainly do not support a conclusion that the term is synonymous with "any gainful employment."
In sum, we hold that the trial court erred by applying workers' compensation law to a contract definition of total disability, and further by failing to accord proper *1134 treatment to ambiguous language in the policy.
REVERSED and REMANDED.
BARFIELD and PADOVANO, JJ., concur.