BROWNING, J.
This is an appeal of a summary judgment entered in favor of the appellee, First Union National Bank (First Union), against the appellant, University Nursing Care Center, Inc. (UNCC). We hold that the trial court erred in granting summary judgment, and remand for further proceedings.
UNCC is the owner of a nursing care facility in Gainesville. Anthony Liuzzo is the sole shareholder of UNCC and is currently its President. Ann Restivo and Suzanne Dornau each served as President of UNCC in the mid-1990s. On or about September 19, 1994, UNCC entered into a management agreement with Long Term Management, Inc. (LTM), to manage UNCC’s facility. LTM was operated by Charlotte Albano and Simon Schwarz.
During 1994-96, UNCC maintained four bank accounts with First Union: an operating account, a money market account, a payroll account, and a trust account. Shortly after UNCC entered into the management agreement with LTM, Suzanne Dornau, on behalf of UNCC, completed a separate form entitled “Certified Corporate Resolution for Depository Authorization” (corporate resolution) for each of the four accounts. Each form specified the names of the persons authorized to transact business on each account; Schwarz and Albano were given signature authority on the payroll and trust accounts, whereas Dornau and Liuzzo were designated as authorized signatories of the operating and money market accounts. At that time, UNCC informed First Union of the management agreement with LTM, which specified that “LTM shall deposit in a bank or banks designated by Owner and in Operating Accounts established in Owner’s name, all funds received from the operations of the Center.” UNCC alleges that First Union received a copy of this management agreement at that time, but First Union disputes that allegation.
In December of 1995, UNCC learned that the operating and money market accounts had been closed. None of the corporate resolutions gave LTM the authority to close any of UNCC’s corporate accounts. At that time, and also in January and February 1996, Liuzzo told the First Union branch manager that Schwarz was no longer authorized to conduct any bank business in any of the accounts of UNCC or on behalf of UNCC. The branch manager stated that she could not take action because the accounts on which Schwarz was transacting business, entitled “Long Term Management, Inc. as agent for UNCC,” did not list Liuzzo’s name as an *1188 authorized signatory. First Union continued to permit Schwarz to deposit third party checks payable to UNCC into LTM accounts without the authorization of UNCC.
On March 14, 1996, Restivo, as president of UNCC, wrote a letter to First Union directing that all checks payable to UNCC should be deposited in a new UNCC account. Upon receipt of that letter, First Union decided to freeze all accounts in the name of “Long Term Management, Inc. as agent for UNCC.” UNCC thereafter sued First Union, alleging breach of their written agreement and negligence. UNCC specifically argued that the corporate resolutions allowed Schwarz to deposit money only into UNCC accounts, and also that the management agreement served as the written notice required to modify any agreement between UNCC and First Union. Upon First Union’s motion for summary judgment, final judgment was entered in favor of First Union.
A movant for summary judgment must demonstrate that there is no genuine issue of material fact. See Lcmders v. Milton, 370 So.2d 368 (Fla.1979). We hold that UNCC has shown the existence of a genuine issue of material fact with respect to both breach of a written agreement and the negligence claim. As to breach of a written agreement, the genuine issue of material fact is whether the corporate resolutions were modified by the UNCC-LTM management agreement, which limited Schwarz’s power to deposit checks payable to UNCC. The argument is twofold: the management agreement may be considered evidence that impacts the meaning of ambiguous terms in the corporate resolutions, and First Union’s receipt of the management agreement may be considered evidence of written notification of a change to the signature authorization forms.
The corporate resolutions’ terms are disputed and can be reasonably construed to reach divergent legal positions. First Union argued at the summary judgment hearing that, while the power granted the named persons “to sign checks, drafts, instruments, bills of exchange, acceptances, and/or other orders for the payment of money from said corporate account(s)” pertains to the individual accounts, the power “to endorse checks, instruments, bills, drafts, certificates of deposit, bonds, and/or other instruments, evidences of indebtedness and orders payable to, owned, or held by this Corporation” pertains to any checks payable to UNCC, and does not limit where the person may deposit such checks or instruments. However, the forms may be read to pertain only to a specific account number because there are four separate forms, each listing the account number of one of UNCC’s four accounts at the top. Also, UNCC presented affidavits stating that First Union told it that the forms authorized the named people to endorse checks to deposit funds only into the specific account numbers listed at the top of the documents. Because the terms of the corporate resolutions “are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties’ intent which cannot properly be resolved by summary judgment.” Strama v. Union Fidelity Life Ins. Co., 793 So.2d 1129, 1132 (Fla. 1st DCA 2001), quoting Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc., 513 So.2d 218, 219 (Fla. 1st DCA 1987).
With respect to the second argument, an issue of material fact exists as to whether the UNCC-LTM management agreement served as written notification to First Union sufficient to limit Schwarz’s ability to deposit checks into accounts not belonging to UNCC. The corporate resolu *1189 tions were subject to change only by written notification. UNCC alleges that the UNCC-LTM management agreement, when given to First Union, constituted written notice to change or limit the corporate resolutions. There are both deposition testimony and statements in affidavits to the effect that UNCC told First Union about the management agreement and gave a copy to First Union, both when it opened the account and again in December 1995. However, First Union’s representative testified at his deposition that First Union did not have a copy of the management agreement. Thus, UNCC has established that there is a genuine issue of a material fact that precludes summary judgment for First Union on the claim of breach of contract.
UNCC has also established a genuine issue of material fact as to whether First Union was negligent in allowing Schwarz to continue depositing checks payable to UNCC into LTM’s account. For purposes of summary judgment, a court is to treat the allegations of the complaint as true. See Connell v. Sledge, 306 So.2d 194 (Fla. 1st DCA 1975), cert, dism., 336 So.2d 105 (Fla.1976), citing White v. Pinellas County, 185 So.2d 468 (Fla.1966). Here, UNCC alleged that First Union had a duty to “safeguard” UNCC’s funds, and that First Union breached that duty “by permitting Mr. Schwarz to transact bank business with UNCC funds by withdrawing funds, transferring funds, depositing checks made payable to UNCC, and /or writing checks against Plaintiffs funds deposited at Defendant’s bank.” Specifically, UNCC argues that First Union was negligent in failing to follow the UNCC-LTM management agreement and in failing to request in December 1995 that UNCC put its request in writing. First Union has not yet disproved UNCC’s allegations because of the aforementioned ambiguity of the corporate resolutions and the question of whether the management agreement constituted written notice of the limitation on Schwarz’s authority. Because First Union has not shown that there is no genuine issue of material fact, the trial court erred in granting summary judgment for First Union as to both claims.
Accordingly, we REVERSE and REMAND for further proceedings.
ERVIN and KAHN, JJ., concur.