VAN NORTWICK, J.
In the case under review, we are required to interpret the provisions of a marital settlement agreement (MSA) which apportioned the military retirement benefits of Henry Toussaint, the former husband, appellee. Norma Toussaint, the former wife, appeals a final order interpreting the subject provision of the MSA, described by the trial court as unambiguous, to limit the portion of the military retirement pay of appellee payable to the former wife to 50% of the retirement benefits that accrued during the marriage. Although the former wife agrees that the subject provision is unambiguous, she argues that the equitable distribution provision grants to her 50% of the full military retirement payable to the former husband. For the reasons *476 explained below, we hold that the pertinent provisions of the MSA are ambiguous and that the trial court erred in not taking parol evidence to elucidate the ambiguity. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
The parties obtained a Final Judgment of Dissolution of Marriage (Final Judgment) on May 3, 1999. The Final Judgment incorporated the MSA, which, in paragraph XV, apportioned the former husband’s military retirement benefits, as follows:
As an equitable distribution of marital property, not an award of alimony, the Respondent/Husband shall pay or cause to be paid, to the Petitioner/Wife, as a property right from the Respondent/Husband’s United States Air Force retirement pay fifty percent (50%) of the Respondent/Husband’s net retirement pay. The Petitioner/Wife’s right to receive the payments described herein, shall terminate immediately upon the Petitioner/Wife’s death.
Additionally, in paragraph XII of the MSA, the parties waived “any and all claims to any right, title, and interest in the non-marital property of the other except as specifically agreed to” in the MSA.
On April 5, 2011, the former husband filed a motion seeking clarification of the Final Judgment and MSA and entry of an enforcement order. The former husband argued that the MSA should be construed so that the former wife was entitled only to 50% of his military retirement benefits that accrued during the marriage. The matter was referred to a general magistrate, who held a hearing on the former husband’s motion. Both parties were represented by counsel and were either physically or telephonieally present.
At the hearing, both parties were sworn under oath and the former husband’s attorney began examination of the former husband. The former husband testified that, at the time of the dissolution of the marriage, he held the rank of major and had been on active duty in the military for sixteen years and five months. According to his testimony, he ultimately retired from the military as a colonel on January 31, 2011, with slightly over 28 years of service. Before the examination could proceed any further, however, the former wife’s counsel objected to the questioning, asserting that it was an attempt to introduce parol evidence concerning a clear and unambiguous portion of the MSA. The general magistrate reserved ruling on the objection to hear argument from the parties on the issue of whether parol evidence was admissible in this proceeding.[1] Following argument by counsel for both parties, the general magistrate sustained the former wife’s objection and prohibited the introduction of parol evidence.
The general magistrate filed a report and recommended order denying the former husband’s motion for clarification and an enforcement order. In the report, the general magistrate found that a plain reading of paragraph XV of the MSA created a property right in the former wife for 50% of the former husband’s full military retirement benefits. The general magistrate explained that, had the parties intended to limit the former wife’s share of the former husband’s military retirement benefits solely to those accruing during the marriage, they could have included such language in the MSA. The magistrate also *477 found that the subject provision of the MSA was not ambiguous and, as a result, parol evidence would not be admissible as to the parties’ intent in drafting this provision. The general magistrate considered the former husband’s motion to be, in effect, a motion to modify a property settlement, which is prohibited under Florida law. See Salomon v. Salomon, 196 So.2d 111, 112-13 (Fla.1967).
The former husband filed an exception to the general magistrate’s report and a hearing was held on the exception in the circuit court. Both parties were present telephonically and represented by the same counsel who appeared before the general magistrate. After hearing opposing arguments, the trial court informed the parties that they could submit proposed orders, including findings of fact.
In its final order, the trial court ruled that the general magistrate’s report and recommendation was contrary to the law and evidence. The trial court found that paragraph XV of the MSA was unambiguous. The trial court ruled that the general magistrate was thus correct in stating that parol evidence is not permitted to alter the terms of the MSA, but was incorrect in disallowing parol evidence to clarify and enforce the correct amount of creditable time used in calculating the former wife’s portion of the former husband’s retirement benefits. The trial court read paragraph XV as creating in the former wife a property right to only 50% of the former husband’s retirement benefits as a division of marital property. Because the MSA includes a specific waiver of each parties’ claims to the others’ non-marital property, the trial court concluded that the former wife was entitled only to 50% of the former husband’s retirement benefits that accrued during the marriage. The court rejected the general magistrate’s contrary interpretation and ruled that, under a plain reading of the MSA in light of Florida law, the former wife was required to include specific language in the MSA to allow her to have access to the former husband’s retirement benefits accumulated after the dissolution. The trial court denied a motion for rehearing and the former wife timely appealed the final order to this Court.
Resolution of this case involves interpretation of an MSA incorporated into a Final Judgment Dissolution of Marriage. We have previously held that “[ijnterpretation of a marital settlement agreement as with a contract is a matter of law putting the appellate court on equal footing with the trial court as interpreter of the written document.” Delissio v. Delissio, 821 So.2d 350, 353 (Fla. 1st DCA 2002) (quoting Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996)). Therefore, the standard of review for the trial court’s ruling on the MSA is de novo.
We have also determined- that, “[a]s a general rule, evidence outside the contract language, which is known as parol evidence, may be considered only when the contract language contains a latent ambiguity.” Duval Motors Co. v. Rogers, 73 So.3d 261, 265 (Fla. 1st DCA 2011). A latent ambiguity arises “where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.” Id. at 265 n. 2 (quoting Barnwell v. Miami-Dade County Sch. Bd., 48 So.3d 144, 145-46 (Fla. 1st DCA 2010)). Finally, “parol evidence is admissible to explain, clarify or elucidate the ambiguous term.” Strama v. Union Fidelity Life Ins. Co., 793 So.2d 1129, 1132 (Fla. 1st DCA 2001) (quoting Friedman v. Va. Metal Prods. Corp., 56 So.2d 515, 517 (Fla.1952)) (internal quotations omitted).
*478 The general magistrate, the trial court, and the parties agree that paragraph XV is not ambiguous and that it should be construed and applied according to its plain language. As to the question of what paragraph XV’s allegedly plain language means, the consensus vanishes. The former wife argues in favor of the general magistrate’s report, which recommended that the MSA’s plain language indicates the former wife is entitled to half of the former husband’s full retirement benefits, including those portions solely attributable to post-dissolution contributions and enhancements in rank. Conversely, the former husband offers the trial court’s final order as the correct interpretation, where the trial court held that the general magistrate misapplied Florida law by attempting to make a post-dissolution equitable distribution of non-marital assets, that only the portion of retirement accumulated during marriage is a marital asset, and that the coverture formula is the proper mechanism for tabulating the former wife’s rightful share of the former husband’s retirement benefits.
There were no factual findings in either the general magistrate’s report or the trial court’s final order. Rather, both tribunals’ examinations and conclusions of law, as well as both parties’ arguments, focused on the proper interpretation of paragraph XV of the MSA. For her part, the former wife primarily relies upon our decision in Nix v. Nix, 980 So.2d 711 (Fla. 1st DCA 2006). In Nix, the former husband challenged a trial court’s post-dissolution domestic relations order which directed that the former wife’s allotment of the former husband’s state retirement benefits would be determined according to a specified formula, which the parties had agreed to and which had been incorporated into the final judgment of dissolution of marriage. Nix, 930 So.2d at 712-13. The former husband contended that the final judgment intended to calculate the former wife’s share of his retirement benefits from the date the petition for dissolution was filed. Id. at 713. In rejecting the former husband’s contention, we noted that the final judgment never assigned a date from which to apply the stipulated benefit formula, though the final judgment explicitly stated that the former wife’s allocation of the former husband’s retirement benefits would be computed using the formula agreed to by the parties. Id.
The former husband in Nix argued that delaying determination of the former wife’s share of his retirement benefits until they began to be distributed would attribute the former husband’s non-marital, post-dissolution assets to the former wife, which is impermissible under Boyett v. Boyett, 703 So.2d 451 (Fla.1997). In Nix, we held that Boyett was not controlling under the facts presented because, “neither Boyett nor any other applicable authority prevents parties to a dissolution action from agreeing that the determination of the parties’ respective shares of retirement proceeds will be made pursuant to an agreed-upon formula to be applied once disbursement of retirement proceeds begins.” Nix, 930 So.2d at 713.
While Nix affirms the principle that parties to a dissolution action may agree to dispose of assets in ways that a trial court would not be able to on its own, and that judges may enforce such agreements when incorporated into final judgments, the Nix principle is not squarely implicated here. The Nix court was persuaded that “the very phrasing of the agreed-upon distribution formula confirms that it was intended to be applied only upon receipt of monthly retirement benefit payments ... made obvious by the formula’s specific incorporation of the former wife’s then-unknown monthly retirement *479 benefit payment as a factor in its computation.” Nix, 930 So.2d at 718. In the case at hand, the parties included no formula for computing the former wife’s share of the former husband’s retirement benefits. Nor is there any language in the MSA that unequivocally sets the date from which the former wife’s right to 50% of the former husband’s retirement benefits is to be calculated.
In the case under review, both the general magistrate and the trial court erred in holding that the MSA was unambiguous. The fact that each read the same document and came to opposite, but equally reasonable conclusions, confirms the document’s latent ambiguity. Therefore, the trial court was correct in ruling that parol evidence was admissible. See Duval Motors, 73 So.3d at 265. Despite recognizing the necessity of parol evidence to “explain, clarify or elucidate” the ambiguity of the retirement distribution in paragraph XV, however, the trial court failed to gather any parol evidence. Strama, 793 So.2d at 1132. Absent such evidence, it is impossible to render an accurate and just determination of the case.
Finally, we address the former husband’s assertion, raised at oral argument, that 10 U.S.C. § 1408 prohibits a judicial order granting the former wife 50% of the former husband’s full retirement benefits. 10 U.S.C. § 1408 governs the payment of retired or retainer pay in compliance with court orders. The statute provides that:
[A] court may treat disposable retired pay payable to a member for pay periods beginning after June 25,1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member’s spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member’s spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member’s spouse or former spouse.
10 U.S.C. § 1408(c)(1). Furthermore:
After effective service on the Secretary concerned of a court order ... with respect to a division of property, specifically providing for the payment of an amount of the disposable retired pay from a member to the spouse or a former spouse of the member, the Secretary shall make payments (subject to the limitations of this section) from the disposable retired pay of the member to the spouse or former spouse ... in the amount of disposable retired pay specifically provided for in the court order.
10 U.S.C. § 1408(d)(1). Finally, the statute states that “[t]he total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay.” 10 U.S.C. § 1408(e)(1).
In the case under review, both the pay period in question and the proceeding to divide the retirement pay began after June 25, 1981. The Secretary was apparently served with proper notification as to the apportionment of the former husband’s retirement for the former wife because there is evidence in the record that the former wife was receiving payments from the Department of Financial and Accounting Services before the former husband initiated *480 the proceedings which underlie this appeal. Therefore, 10 U.S.C. § 1408 does not prohibit payment to the former wife from the former husband’s military retirement benefits.
Accordingly, we REVERSE the trial court’s order to the extent that it concludes the MSA is unambiguous, and REMAND with instructions for the trial court to hold a new hearing and allow the parties an opportunity to present parol evidence to resolve the latent ambiguity as to their intent in drafting paragraph XV of the MSA.
Because we reverse and remand, the issue of whether the trial court erred in adopting the former husband’s proposed final order without alteration is moot.
WETHERELL and MAKAR, JJ., concur.

. During argument on the objection, the former wife's counsel and the general magistrate indicated that, following the former husband's retirement, the Department of Financial and Accounting Services, which provides payment services for military retiree benefits, began paying the former wife 50% of the former husband's full retirement pay.