GROSS, J.
Robert Elbaum appeals from a final order dismissing with prejudice his petition to terminate or modify his alimony obligations. We affirm because the marital settlement agreement unambiguously limited the ability to modify alimony to specific situations not raised in the petition.
After seventeen years of marriage, former husband and appellee Denise Elbaum were divorced. The 2007 final judgment dissolving their marriage incorporated a marital settlement agreement (the “Agreement”) requiring former husband to pay former wife $2,000 per month in permanent alimony until former husband reaches 62 years of age — an amount former wife acknowledged in the Agreement was “fair, adequate, and satisfactory to her and in keeping with her accustomed standard of living and her reasonable requirements and giving consideration of her own ability to provide for her own support and having contemplated all her present and future needs.” Aside from the age limitation, the Agreement provided that the alimony obligation would be terminable only upon former wife’s “remarriage” or the death of either party.
Article XII of the Agreement set forth the limited circumstances under which either party could seek alimony modification, providing, in pertinent part, as follows:
The parties acknowledge that they have been advised by counsel of the law in Florida concerning modification of permanent alimony. The alimony provided for herein shall be non-modifiable except in the event of an unforeseen circumstance involving the business of the [Former] Husband or the health of the [Former] Husband affecting his ability to work, and only in the event the [Former] Husband receives no business income as a result of unforeseen circumstance(s) or the health of the [Former] Husband.
(Emphasis added). As the agreement described, these limitations on modification served as a quid pro quo, with both parties *660 foregoing potential future grounds for modification. As Article XII continues:
[E]ach party fully understands and has been advised that he or she may be entitled to some additional amount or form of alimony, either rehabilitative or permanent. Said form of alimony could be due now or in the future, but specifically and unequivocally waives any and all entitlement thereto, as well as any right to a modification of same now or in the future. Each party fully understands that they may have been entitled to some additional amount or form of alimony other than as set forth above. However, after being fully advised and after having a specific understanding of all the various different types of alimony, each party specifically waives any right or entitlement. Each party acknowledges that this waiver is irrevocable and that there is no change or potential change in circumstances in the financial ability of either party, or, in the future ability or disability, physical or otherwise of either party which could, or will permit, either of them to obtain permanent, periodic, lump sum, rehabilitative alimony or modification from the other party and, therefore, waives any future right of modification although none exists.

Procedural Posture

In 2012, former husband filed a petition seeking to modify or terminate his alimony obligation on the grounds that former wife’s needs had decreased since she was in a “supportive relationship” where she had been cohabitating and mingling assets with her partner for at least two years. Former wife moved to dismiss the petition, arguing that the Agreement unambiguously contemplated that modification or termination of former husband’s alimony obligation would be limited to those circumstances enunciated in Article XII. The circuit court granted former wife’s motion to dismiss, finding the agreement was “clear and unambiguous” in stating “that the alimony was non-modifiable” except in situations involving “a decrease in the business, poor health of the [Former] Husband, the Former Husband reaching the age of 62, or the Wife’s remarriage.” As to former husband’s requested basis for departure, the trial court reasoned that
[t]he parties were aware at the time when the Agreement was executed that cohabitation is something which would normally allow for a modification. That was foreseeable and contemplated, because Florida Statute 61.13(3) was in effect at the time this Agreement was entered into.
As his sole issue on appeal, former husband argues that Article XII’s language stating that the alimony was “sufficient and adequate for the former wife based upon her then current circumstances, needs, and earning capacity” suggested “that a change in such circumstances would permit her to seek a modification.”

Standard of Review

“We review de novo a trial court’s final disposition on a motion to dismiss for failure to state a cause of action.” Magnum Capital, LLC v. Carter & Assocs., LLC, 905 So.2d 220, 221 (Fla. 1st DCA 2005). “When determining the merits of a motion to dismiss, a court may not go beyond the four corners of the complaint and must accept the facts alleged therein and exhibits attached as true, with all reasonable inferences drawn in favor of the pleader.” Regis Ins. Co. v. Miami Mgmt., Inc., 902 So.2d 966, 968 (Fla. 4th DCA 2005). The trial court’s “ ‘interpretation of the wording and meaning of the marital settlement agreement, as incorporated into the final judgment, is subject to de novo review.’ ” Kipp v. Kipp, 844 So.2d 691, 693 (Fla. 4th *661 DCA 2003) (quoting McIlmoil v. McIlmoil, 784 So.2d 557, 561 (Fla. 1st DCA 2001)).

Analysis

A marital settlement agreement is a contract “ ‘subject to interpretation like any other contract.’ ” Riera v. Riera, 86 So.3d 1163, 1166 (Fla. 3d DCA 2012) (quoting Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996)). “Accordingly, terms contained in such agreements should be given their plain meaning and ‘not be disturbed unless found to be ambiguous or in need of clarification, modification, or interpretation.’ ” Schmachtenberg v. Schmachtenberg, 34 So.3d 28, 33 (Fla. 3d DCA 2010) (quoting Ballantyne, 666 So.2d at 958). “[T]he goal is to arrive at a reasonable interpretation of the text of the entire agreement in order to accomplish the agreement’s stated meaning and purpose.” Avellone v. Avellone, 951 So.2d 80, 83 (Fla. 1st DCA 2007) (citing Delissio v. Delissio, 821 So.2d 350, 353 (Fla. 1st DCA 2002)).
Under section 61.14(l)(b)l., Florida Statutes (2012), a court may reduce or terminate alimony if “a supportive relationship has existed between the obligee and a person with whom the obligee resides.” As we have explained:
[Sjection 61.14(l)(b) requires the court to determine if an alimony obligee has entered into a relationship that provides the economic support equivalent to a marriage, and if so, the court may reduce or terminate alimony as the equities require. Section 61.14(l)(b) is actually a codification of prior case law which held that, in post dissolution matters, cohabitation can be a basis for reduction or termination of alimony awards.
Linstroth v. Dorgan, 2 So.3d 305, 307 (Fla. 4th DCA 2008). “A supportive relationship is a relationship that ‘takes the financial place of a marriage and necessarily decreases the need of the obligee.’ ” Overton v. Overton, 34 So.3d 759, 761 (Fla. 1st DCA 2010) (quoting French v. French, 4 So.3d 5, 6 (Fla. 4th DCA 2009)).
The parties may waive this statutory right to seek “modification of alimony provisions in a settlement agreement if the language in the agreement clearly and unambiguously expresses waiver or if the interpretation of the agreement as a whole can lead to no other conclusion but waiver.” Hahamovitch v. Hahamovitch, 133 So.3d 1008, 1016 (Fla. 4th DCA 2014), rev. granted, No. SC14-277, 2014 WL 1682898 (Fla. Apr. 22, 2014) (citing Tapp v. Tapp, 887 So.2d 442, 444 (Fla. 2d DCA 2004)). Waiver, in this context, “encompasses not only the intentional or voluntary relinquishment of a known right, but also conduct that warrants an inference of the relinquishment of a known right.” Singer v. Singer, 442 So.2d 1020, 1022 (Fla. 3d DCA 1983).
Applying these principles, this case is nearly identical to that confronted in Smith v. Smith, 110 So.3d 108 (Fla. 4th DCA 2013). In Smith, the parties’ marital settlement agreement provided:
2. Said alimony shall be non-modifiable by the parties, in either amount or duration, regardless of any change in circumstances of either party.
3. This alimony shall terminate on the Husband’s death, the Wife’s death, or the Wife’s remarriage, whichever shall first occur.
Id. at 110. The former husband in Smith petitioned to terminate his alimony obligation on the grounds that the former wife was in a supportive relationship. Id. at 109. The former wife successfully moved for judgment on the pleadings, and relied on the language of the agreement. Id. Upon these facts, we affirmed the judgment, reasoning as follows:
*662 Viewed as a whole, the parties’ agreement unambiguously provided that all alimony was non-modifiable and would cease only upon the occurrence of the death of either of the parties, or [the former wife’s] remarriage. To be sure, the concept of a supportive relationship as a possible termination event was something the parties could have contemplated at the time they entered into their agreement. They chose not to do so.
Id. at 110 (citation omitted). The sentiment, therefore, was “that a party to a marital settlement agreement may not invoke Florida’s supportive relationship statute in order to modify or terminate an alimony obligation where such action is prohibited under the terms of the agreement.” Id. at 109.
In this case, the Agreement’s Article XII unambiguously provided that former husband’s alimony obligation would be “non-modifiable” absent “unforeseen circumstances” involving the deterioration of former husband’s health or business. Both parties acknowledged that they had been informed that other grounds for modification existed. To allow modification in this circumstance would eviscerate the term “non-modifiable.”
The former husband attempts to rely upon Centeno v. Centeno, 109 So.3d 1259 (Fla. 2d DCA 2013), and Cook v. Cook, 94 So.3d 683 (Fla. 4th DCA 2012). Neither case controls.
In Centeno, the former husband filed a petition for a downward modification of the amounts of his alimony and child support obligations. 109 So.3d at 1260. The parties’ agreement provided that, “Except as set forth below, the term of the rehabilitative alimony shall be non-modifiable[;] however, since the alimony is insufficient to meet the needs of the wife as established during the parties’ marriage, the amount of the alimony shall be modifiable.” Id. at 1259-60. The agreement then set forth certain conditions under which the amount and term of alimony could be reduced or extended, depending on whether the wife remarried. Id. at 1260. These paragraphs ended with statements that “[t]he payments established by this paragraph shall be non-modifiable ... as to amount and duration.” Id.
The circuit court concluded that the phrase “since the alimony is insufficient to meet the needs of the wife” limited the parties’ rights to modify to only the wife’s right to seek an increase. Id. The Second District disagreed, reasoning that the “language does not clearly and plainly state that such would be the only circumstance under which modification may occur.” Id. at 1260-61. The court further stated:
We conclude that the language of the instant MSA also describes one set of facts under which the amount of rehabilitative alimony may be modified but does not in clear and express terms limit modification to only that one set of facts. The terms are not a clear and unambiguous waiver by the Former Husband of his statutory right to seek modification, and we decline the invitation to read the language as a condition precedent to his seeking relief.
Id. at 1261 (emphasis added). Thus, the Centeno marital settlement agreement did not contain the same unambiguous limitations on the grounds for modification that existed in this case.
Cook involved a marital settlement agreement that required the former husband to pay $1 annually in alimony, but conditioned modification as follows:
This amount may be modified upon any modification in custody of the minor children, such that the alimony obligation would be increased. It is the intent of the parties that the wife be able to modify this amount at any time there is *663 a modification to the custody provisions of this [a]greement.
94 So.3d at 684. Relying upon this provision, the trial court declined the former wife’s request to modify the former husband’s alimony obligation, finding that the marital agreement “provided that alimony was modifiable only in the event that custody was modified.” Id. at 684. In reversing, we found the language related to alimony modification not to be a condition precedent, since it “allows for the modification of alimony if there is a modification to the custody restrictions but does not restrict the modification of alimony to only those circumstances.” Id. at 685. Thus, the provision was neither a “limiting clause” nor the unequivocal waiver that exists in this case. Id.
Here, Article XII of the Agreement “in clear and express terms” limits modification to situations involving the deterioration of former husband’s health or business. The language leaves no room for interpretation and makes it clear that the parties contemplated no other circumstance where the amount of alimony could be modified.

Affirmed.

GERBER and FORST, JJ., concur.