# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D17-1032

———————————————

YVETTE D. QUILLEN, former wife,

Appellant,

v.

WILLIAM E. QUILLEN, former husband,

Appellee.

———————————————

On appeal from the Circuit Court for Duval County.
John I. Guy, Judge.

May 3, 2018

JAY, J.

Yvette D. Quillen ("former wife") appeals the trial court's order dismissing her Supplemental Petition for Modification and Amended Motion for Civil Contempt and Enforcement. The trial court determined—based on the "four corners" of the parties' Consent Final Judgment of Dissolution of Marriage and its "clear and unambiguous" language—that the alimony obligation of William E. Quillen ("former husband") terminated once the parties' youngest child reached the age of majority. Thus, it dismissed the former wife's original Motion for Civil Contempt and Enforcement. In addition—because it concluded there were "no outstanding alimony obligations"—the trial court held that the former wife's Supplemental Petition for Modification and

Amended Motion for Civil Contempt and Enforcement were "moot and therefore dismissed." For the reasons that follow, we reverse and remand for further proceedings.

## I.

Before reaching the merits of this appeal, we must first address the procedural posture of the case as it existed below. It is necessary that we do so to address the events that led to the trial court's decision to grant the motion to dismiss the motion for civil contempt and enforcement.

## A.

In November 2016, the former wife filed her Motion for Civil Contempt and Enforcement. In her motion, the former wife alleged that a Consent Final Judgment of Dissolution of Marriage (alternatively, "CFJ") had been approved and entered on May 2, 2003, obligating the former husband to pay her $500 per month in alimony, while requiring the former wife to pay the former husband $500 per month in child support. She further asserted that the provisions of the CFJ addressing alimony and child support provided that the former husband's alimony obligation would be offset by the former wife's support obligation "and vice versa." The former wife then alleged that the parties' youngest child had reached the age of majority in September 2011, "thereby eliminating any claim to an offset of the alimony obligation owed to the Former Wife."

Accordingly, the former wife claimed that the former husband's alimony obligation had remained "fully due since October, 2011" through the date of the former wife's motion, yet the former husband failed to honor that obligation. Therefore, the former wife contended that she was entitled to recover the accrued alimony arrearage from the former husband, as well as ongoing monthly alimony in the amount awarded in the CFJ. She also alleged that the former husband should be held in contempt for his failure to meet his monthly alimony obligation. The CFJ was *not* appended to the motion.

"Motions" in family practice matters are controlled by Florida Family Law Rule of Procedure 12.100(b), which has its counterpart

2

in Florida Rule of Civil Procedure 1.100(b). Rule 12.100(b) provides that "[a]n application to the court for an order must be made by motion which must . . . state with particularity the grounds therefor, and must set forth the relief or order sought." It is a tenet of motion practice that—while written responses to motions are not required—when the non-moving party opposes a motion, it may file a response or a memorandum of law in opposition to the motion. *See generally* The Florida Bar Continuing Legal Education Materials, *Florida Civil Trial Preparation: Motion Practice* (Eighth ed. 2017).

In the present case, however, the former husband did not file a response or a memorandum of law in opposition to the former wife's motion. Instead, he filed a "motion to dismiss" the former wife's motion, arguing that the plain and unambiguous language of the CFJ established that no alimony obligation existed once the youngest child reached the age of majority and the former wife's child support obligation ceased. In essence, then, the former husband filed a defensive motion. But defensive motions are—by rule—directed only to *pleadings. See* Philip J. Padovano, 5 West's Florida Practice Series*, Civil Practice* § 7:27 (2017-18 ed.) ("[A] party may move to dismiss a pleading if the motion to dismiss asserts a defense that can be raised by motion . . . ."). And, more pertinent to the present discussion, "a motion is *not* a pleading." Bruce J. Berman & Peter D. Webster, 4 West Florida Practice Series, *Civil Procedure* § 1.100:6 (April 2017) (footnote omitted); *see also Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 567 (Fla. 2005) ("[A] motion to dismiss is not a 'responsive pleading' because it is not a 'pleading' under the rules. *See* Fla. R. Civ. P. 1.100(a)."); *Green v. Sun Harbor Homeowners' Ass'n*, 730 So. 2d 1261, 1262-63 (Fla. 1988) (correcting a statement that the term "pled" included filing motions); *Viering v. Fla. Comm'n on Human Relations*, 128 So. 3d 967, 969-70 (Fla. 1st DCA 2013) ("Motions are not pleadings."); *N.S. v. Dep't of Children & Families*, 119 So. 3d 558, 561 (Fla. 5th DCA 2013) (emphasis in original) ("It is well settled that '[a] motion is *not* a pleading.'" (quoting *Sardon Found. v. New Horizons Serv. Dogs, Inc.*, 852 So. 2d 416, 421 (Fla. 5th DCA 2003))).

Instead, Florida Family Law Rule of Procedure 12.140(b), as does its equivalent in Florida Rule of Civil Procedure 1.140(b),

requires "[e]very defense in law or fact to a claim for relief in a *pleading* must be asserted in the responsive pleading, if one is required, but the following responses may be made *by motion* at the option of the pleader: . . . (6) failure to state a cause of action . . . ." (Emphasis added.) In the best light, the former husband's motion to dismiss might be viewed as moving to dismiss for failure to state a cause of action. But it nonetheless remained a motion to dismiss a motion—not a pleading—and, therefore, it was not an authorized response to the former wife's motion under the applicable rules.

In the time between the former husband's service of his motion to dismiss and the trial court's entry of its currently order on appeal, the former wife filed her Supplemental Petition for Modification and Amended Motion for Civil Contempt and Enforcement. Florida Family Law Rule of Procedure 12.110(d), entitled "Pleadings," provides that "[w]hen the nature of an action permits pleadings subsequent to final judgment and the jurisdiction of the court over the parties has not terminated, the initial pleading subsequent to final judgment must be designated a supplemental petition." In paragraph 10 of the CFJ, it was agreed that the trial court would "retain jurisdiction to enforce, and where appropriate, to modify the terms hereof upon application by either party for enforcement or modification of any provision of the consent final judgment herein." As part of the order granting the motion to dismiss, the former wife's Supplemental Petition for Modification was also dismissed.[1]

---

[1] Because the Order Granting Motion to Dismiss "constitutes an end to the judicial labor in the cause, and nothing further remains to be done by the court to effectuate a termination of the cause as between the parties directly affected," it is a final order subject to plenary appeal. *See S.L.T. Warehouse Co. v. Webb*, 304 So. 2d 97, 99 (Fla. 1974) (footnote omitted); *see also Bucsit v. Bucsit*, 229 So. 3d 430, 431 n.1 (Fla. 1st DCA 2017) ("[T]he orders entered in modification proceedings have all of the aspects of final judgments. We therefore conclude that they are final judgments, subject to motions for rehearing under Florida Rule of Civil

B.

We now turn our focus to the merits of the appeal.

After nineteen years of marriage, the former wife filed a Petition for Dissolution of Marriage in June 2002. Among other things, the former wife sought entitlement "to alimony: temporary, permanent periodic, lump sum and rehabilitative." Three children were born of the marriage, but by that point, only two remained minors. Following mediation in 2003, the parties executed, and the trial court approved, the CFJ. Under the terms of the CFJ, the parties were awarded shared parental responsibility, but the former husband was designated the primary residential custodian. In terms of child support and alimony, the CFJ made the following provisions in paragraphs 4 and 7, respectively:

> 4. CHILD SUPPORT: The parties agree that under the Child Support Guidelines and facts of this case, the Wife's child support obligation for the two remaining minor children . . . is and shall be $500.00 per month. Said child support shall be payable by the Wife directly to the Husband on the first day of the month following the entry of this Consent Final Judgment. *Due to the Husband's alimony obligation, as specified below, the parties agree that it will be unnecessary for the Wife to make actual payment of her child support obligation to the Husband. In other words, the child support obligation and alimony obligation shall offset each other on a dollar for dollar basis.* The Husband waives any right or entitlement to retroactive child support.
>
> . . . .
>
> 7. ALIMONY: The parties agree that under the facts of this case, *the Husband's alimony obligation is and shall be $500.00 per month.* Said obligation shall be payable by the Husband directly to the Wife on the first day of the month following the entry of this Consent Final

Procedure 1.530(a), and appealable as plenary appeals." (quoting *Roshkind v. Roshkind*, 717 So. 2d 544, 544 (Fla. 4th DCA 1997))).

5

Judgment. *Due to the Wife's child support obligation, as specified above, the parties agree that it will be unnecessary for the Husband to make actual payment of his obligation to the Wife. In other words, the child support obligation and alimony obligation shall offset each other on a dollar for dollar basis.* The Wife waives any right or entitlement to retroactive [temporary] alimony.

(Emphasis added.)

In her supplemental petition, the former wife noted that all three of the parties' children had reached the age of majority, and based on their majority status, she asked the trial court to terminate her child support obligation under section 61.13(1)(a)2., Florida Statutes. She went on to allege that there had been "multiple substantial changes of circumstances" since the entry of the CFJ, including (1) the former wife's chronic illnesses hindering her ability to find employment and placing "significant limitations on the type of work she [could] perform"; (2) the former wife's collecting disability and workers' compensation benefits; (3) the former wife's belief that the former husband owned several businesses and that his income had increased significantly, thereby requiring the court's reevaluation of his ability to pay and the amount of alimony; and (4) the former wife's having not received a single payment of alimony from the former husband as contemplated under the terms of the CFJ, resulting in her inability "to make ends meet [and] afford basic necessities" and causing her to run "a significant [monthly] deficit." Based on the foregoing, the former wife requested an order modifying the CFJ to terminate child support and "provide for an upward shift and modification of the alimony obligation."

The Amended Motion for Civil Contempt and Enforcement, contained in the petition under separate heading, recognized that the parties had been married for nineteen years and, therefore, the marriage was presumptively long-term. It averred that the former husband had owed the former wife monthly alimony of $500 since October 2011—after the parties' youngest child reached the age of majority—but had willfully failed to pay alimony to her while having the ability to do so, entitling her to recover the alimony

arrearage and to receive ongoing and future alimony. The former wife therefore moved the court to hold the former husband in contempt.

Subsequently, after a hearing was held on the former husband's Motion to Dismiss,[2] the trial court entered its Order Granting Motion to Dismiss in February 2017. In its order, the court arrived at the following pertinent "conclusions of law":

> C. The Court in its review of the Consent Final Judgment finds that this was an agreement made between the parties and there is no language contained in the Consent Final Judgment that could reasonably be construed to extend the alimony obligation beyond the time the [sic] child support obligation, which ended by operation of law.

> D. The Court is confined to the four corners of the Consent Final Judgment when the language is clear and unambiguous, which it is in this case.

---

[2] The transcript of the hearing, if one exists, is not contained in the Record on Appeal. Its absence significantly hinders our review to the extent that we are unable to ascertain which arguments now presented on appeal are preserved by their having first been argued before the trial court. *See Rose v. Clements*, 973 So. 2d 529, 530 (Fla. 1st DCA 2007) (holding that "[d]ue to the insufficient record, this court is unable to determine on what basis, if any, Appellants argued against the motion for summary judgment because the hearing on this motion was not recorded. Thus, this court is unable to review the factual or legal basis for the trial court's decision."). However, with the exception of the former husband's raising in his Answer Brief the doctrine of laches directed to the five years the former wife waited after her youngest child reached the age of majority before filing her petition—which argument the former wife asserted in her Reply Brief was not specifically argued below—we are confident that the parties and the judge were occupied primarily with ascertaining the meaning of paragraphs 4 and 7 of the CFJ.

E. Counsel for the Former Wife argues that the alimony obligation should outlast the child support obligation; however, there is no language in the Consent Final Judgment to that effect.

F. The Court also notes that the former Wife's child support obligation ceased several years ago and she has not previously filed anything to enforce any outstanding obligation against the Former Husband until the most recent Motion for Contempt.

G. Because the court finds there is no outstanding alimony obligations, the Former Wife's Supplemental Petition for Modification and Amended Motion for Civil Contempt is moot and therefore dismissed.

The former wife raises four points on appeal addressing the foregoing conclusions of law. Our analysis follows.

## II.

In acting on the former husband's motion to dismiss, the trial court considered its review confined to the "four corners" of the CFJ. That four corners analysis effectively restricted the trial court's consideration to the terms of the CFJ. For clear and unambiguous agreements, the trial court's approach is in keeping with the governing principles of contractual interpretation in Florida. *See Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011) ("Where the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document."). In domestic law, the rule of construction is the same. As we expressed in *Avellone v. Avellone*, 951 So. 2d 80 (Fla. 1st DCA 2007):

A marital settlement agreement is a contract subject to interpretation like any other contract. *Delissio v. Delissio*, 821 So. 2d 350, 353 (Fla. 1st DCA 2002). . . . *Where an agreement's terms are unambiguous*, a court must treat the written instrument as evidence *of the agreement's meaning and the parties' intention. Id.* A court must not isolate a single term or group of words and read that part in isolation. *Id.* Rather, the goal is to arrive at a reasonable interpretation of the text of the entire

8

agreement in order to accomplish the agreement's stated meaning and purpose. *Id.*

951 So. 2d at 83 (emphasis added). To the extent our review is informed solely by the terms of the CFJ—the equivalent of a settlement agreement—our standard of review is de novo. *Rosenthal v. Rosenthal*, 199 So. 3d 541, 542 (Fla. 1st DCA 2016) ("Interpretation of marital settlement agreements is subject to de novo review, just as any other contract interpretation is, at least in the absence of parol evidence." (quoting *Graham v. Graham*, 123 So. 3d 625, 627 (Fla. 1st DCA 2013))). Furthermore, "[i]nterpretation of a marital settlement agreement as with a contract is a matter of law putting the appellate court on equal footing with the trial court as interpreter of the written document." *Ballantyne v. Ballantyne*, 666 So. 2d 957, 958 (Fla. 1st DCA 1996).

Other principles are equally fundamental to our current inquiry. "A settlement agreement should not be disturbed unless found to be ambiguous or in need of clarification, modification, or interpretation." *Id.*; *accord Elbaum v. Elbaum*, 141 So. 3d 658, 661 (Fla. 4th DCA 2014). If there is no ambiguity, the parties are bound by the terms of their agreement. *Ballantyne*, 666 So. 2d at 959. "As with any contract, the starting point is the language of the agreement." *Graham v. Graham*, 123 So. 3d 625, 627-28 (Fla. 1st DCA 2013) (citing *Duval Motors Co. v. Rogers*, 73 So. 3d 261, 265 (Fla. 1st DCA 2011)). A "contract should be considered as a whole, not in its isolated parts." *Maines v. Davis*, 491 So. 2d 1233, 1235 (Fla. 1st DCA 1986).

Here, the trial court reviewed the relevant language of the CFJ and judged it unambiguous: "Counsel for the Former Wife argues that the alimony obligation should outlast the child support obligation; however, there is no language in the Consent Final Judgment to that effect." Our independent review of the same language, however, persuades us to conclude just the opposite; the relevant terms concerning the former wife's right to continuing alimony are ambiguous. To be sure, paragraph 4 obliged the former wife to pay to the former husband monthly child support of $500; and paragraph 7 obliged the former husband to pay to the former wife monthly alimony in the same amount. And it is equally clear under the terms of these interrelated paragraphs that the parties

9

intended their respective obligations would offset each other dollar for dollar, so that neither party would have to pay the other anything *so long as* the former wife's child support obligation existed. But beyond that—once the former wife's child support obligation ended—the parties' intent regarding the continuation of the former husband's monthly alimony obligation is not so certain. It is at this point that the agreement ceases to dovetail.

On the one hand, paragraph 7 opens with the indisputable decree that the former husband's "alimony obligation *is and shall be* $500 per month." The emphasized language suggests both a present and a future alimony obligation. But, in contrast, the express offsets arguably mark an ending point to both obligations of child support and alimony. Moreover, paragraph 7 lacks any definition of the form of alimony awarded the former wife, e.g., temporary, rehabilitative, or permanent. Nor is there any verbiage indicating what would happen to the former husband's alimony obligation upon either of the contingencies of the former wife's remarriage or her death. Thus, while in operation, the language of paragraphs 4 and 7 unmistakably mean one thing, we conclude that upon the event of the parties' youngest child having reached the age of majority in 2011, any implicit consensus as to the intent of paragraph 7 vanishes. In this regard, we conclude that the CFJ contains a latent ambiguity.

"A latent ambiguity arises 'where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *Toussaint v. Toussaint*, 107 So. 3d 474, 477 (Fla. 1st DCA 2013) (quoting *Duval Motors Co.*, 73 So. 3d at 265 n.2); *see also Taylor v. Taylor*, 183 So. 3d 1121, 1122 (Fla. 5th DCA 2015) ("A latent ambiguity exists where the language of an agreement is facially clear but an extrinsic fact or extraneous circumstance creates a need for interpretation or reveals an insufficiency in the contract or a failure to specify the rights or duties of the parties in certain situations.").

The present agreement illustrates just such "an insufficiency in the contract or a failure to specify the rights or duties of the parties in certain situations." *Taylor*, 183 So. 3d at 1122.

10

Paragraphs 4 and 7 contain no compass to guide the parties once the support and alimony offsets were no longer operative. Moreover, the fact that the parties "read the same document and came to opposite, but equally reasonable conclusions, confirms the document's latent ambiguity." *Toussaint*, 107 So. 3d at 479. Consequently, we hold that the trial court erred when it found that the alimony obligations of the CFJ were unambiguous. Under the circumstances, parol evidence would be admissible "'to explain, clarify or elucidate the ambiguous term[s].'" *Id.* at 477 (quoting *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001)).

## III.

We reverse the trial court's Order Granting Motion to Dismiss, including its dismissal of the former wife's Supplemental Petition for Modification.[3] We remand the case with instructions for the trial court to permit the parties to present parol evidence to resolve the latent ambiguity concerning their intent in drafting paragraphs 4 and 7. The trial court is directed to reconsider the former wife's Supplemental Petition for Modification, as well as her Amended Motion for Civil Contempt and Enforcement.

REVERSED and REMANDED for further proceedings, with instructions.

B.L. THOMAS, C.J., and BILBREY, J., concur.

---

[3] We take this opportunity to reiterate that, under paragraph 10 of the CFJ, the trial court retained jurisdiction to enforce or modify any of its provisions. The law is well settled that "'the statutory right to modification, unless specifically waived, is incorporated as a matter of law in any agreement or judgment providing for alimony.'" *Rosenthal v. Rosenthal*, 199 So. 3d 541, 542 (Fla. 1st DCA 2016) (quoting *Harmon v. Harmon*, 629 So. 2d 1011, 1012 (Fla. 4th DCA 1993)). As evidenced by the express terms of paragraph 10, the former wife did not waive her right to seek modification of the CFJ.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


William S. Graessle and Jonathan W. Graessle of William S. Graessle, P.A., Jacksonville, for Appellant.

Michael J. Korn of Korn & Zehmer, P.A., Jacksonville; and Homer A.C. Bliss of Homer A.C. Bliss, P.A., Jacksonville, for Appellee.